GERRARD, Respondent, vs. LA CROSSE CITY RAILWAY COMPANY, Appellant

*January 28—February 18, 1902.*

*Appeal and error: Street railways: Clearing tracks: Negligence: Contributory negligence: Streets: Evidence: Court and jury.*

1. Where a case is submitted to a jury upon a special verdict, it is error to give instructions which plainly tell the jury the legal effect of their answer upon the question of contributory negligence.

2. A street railway was operated under an ordinance forbidding it to allow snow to accumulate upon its tracks or be deposited upon the street in such manner as to obstruct travel or render the same unsafe. In an action for personal injuries the complaint set out the manner in which defendant had disposed of the snow which had fallen on its tracks, the ordinance requirements in detail, and charged their violation; it also alleged that the defendant negligently caused the snow to be *excavated and removed* in such manner as to leave a deep ditch, rendering the street unsafe and dangerous for public travel. *Held,*

Gerrard v. La Crosse City R. Co.·113 Wis. 258.

that the complaint set up a breach of the common-law duty of defendant, wholly independent of the ordinance provisions.

3. A street railway company which accepts a franchise to operate its railway upon the streets of a city for private gain, impliedly agrees that it will use due care not to unnecessarily impede travel, or make the use of the street hazardous. Such burden is a continuing one, and it must bear it, though to do what due care and diligence requires may sometimes entail considerable expense.

4. Where a street railway clears its track for its own convenience, it must do what is reasonably necessary to make that part of the street not occupied by its track reasonably safe. It cannot for its own accommodation obstruct the street so as to endanger travelers.

5. A street railway company, after a heavy fall of snow, brushed the snow from its tracks in such manner as to leave its tracks in a trench, with sides of snow, sloping toward its tracks from a height of eleven to fourteen inches in a distance of from one and one half to three feet. Plaintiff, a woman accustomed to handle horses, riding in a cutter drawn by a gentle horse, turned to go over the track—pretty near straight across the track—and while driving slow, tipped over and was injured. *Held*, that the apparent danger was not so great as to justify a ruling that the plaintiff, in attempting to cross the track, was guilty of contributory negligence as matter of law.

6. In such case, the question whether plaintiff exercised ordinary care in making the attempt, in the manner in which she did make it, is a question for the jury, under proper instructions. *Hausmann v. Madison*, 85 Wis. 187, and *Devine v. Fond du Lac*, *ante*, p. 61, distinguished.

APPEAL from a judgment of the circuit court for La Crosse county: J. J. FRUIT, Circuit Judge. *Reversed.*

This is an action to recover for personal injuries. The facts were substantially as follows: The defendant is a street railway company operating its tracks in the city of La Crosse. One section of the ordinance giving the company the right to operate its railroad provided that the railway company should not allow snow or ice to accumulate on its tracks in a quantity sufficient to obstruct or hinder the passage of carriages or sleighs, and should not deposit the same on any portion of any street, so as to obstruct or render the same unsafe, or in-

terfere with ordinary travel thereon.  Market street, in the·
city of La Crosse, runs east and west and is sixty-six feet in
width, and the defendant operates a single track upon said
street; the track being located in the center of the street.  The·
width of the roadway between the curbs is thirty-eight feet;
the width of the railway track is five feet; thus leaving a dis--
tance on each side of the track of sixteen and one-half feet..
Upon the night of December 11 and 12, 1899, there was a
severe snowstorm, fourteen to sixteen inches deep.  On the·
morning of the 12th the tenants on the north side of Market
street at the place of the accident hereafter named, shoveled
the snow from their sidewalks and curb onto the roadway,
and spread it out between the curb and the track.  The de-
fendant used an electric sweeper to clear its tracks, but in·
order to operate the same it is necessary to clean the rails, in·
order to secure contact of the wheel with the rail.  For this·
purpose early in the morning of the 12th two men were sent
over the track on Market street to shovel the snow from each·
rail, which they did; making a groove in the snow the width
of a shovel over each rail, and throwing the snow on either
side.  In the afternoon of the same day the electric sweeper·
was put on, and swept all of the snow from the track, and a
strip sixteen inches wide on the north side thereof, and threw·
it all on the south side of the track; leaving the track in a
sort of a trench, with sloping sides of snow.  Between this
time and the 19th of December the street was used in the
usual way by teams, and the surface was worn and packed
down hard; the temperature during that time being such that
there was little, if any, melting.  On December 19th, on the
north side of the track at the place of the accident, there be--
gan a rise or slope to the north eleven to fourteen inches in
height in a distance of somewhere from one and one half to
three feet, from which place to the curb the surface was
nearly level.  About noon of the 19th, the plaintiff, who was
a woman fifty years of age, and accustomed to handling·

horses, was riding in a cutter drawn by a gentle horse, west on the north side of Market street, and stopped and hitched her horse for a few moments, and went into a store. Coming out of the store, she got into the cutter· and started on west, and after proceeding a short distance, found a delivery wagon standing so that she could go no farther west upon the north side of the track. She then turned and drove across the railroad track in order to get by the delivery wagon, and while so doing the sleigh tipped over as it went down the slope on the north side of the track, and she was thrown out and injured.

The jury returned the following special verdict:

"(1) Did the defendant company, at or about the time alleged in plaintiff's complaint, allow snow or ice to accumulate upon and between the rails of its track at the point where it is alleged the injury in question occurred, in a quantity sufficient to obstruct or hinder the passage of vehicles or sleighs? No (by the court). (2) Did the defendant railway company, in the removal of the snow or ice from its railway track, on or about the 12th or 13th day of December, 1899, at the point on Market street where the alleged injury to plaintiff occurred, deposit such snow or ice, or any sufficient quantity thereof, upon the northerly side of the north rail of said track, so as to unreasonably obstruct or render travel by vehicles unsafe at the point in question? No. (3) If you answer question No. 2 'Yes,' then was the removal or deposit of such snow or ice by the railway company the proximate cause of the plaintiff's injury? Not answered. (4) Did the defendant railway company, by the removal of the snow or ice from its track on or about the 12th or 13th of December, 1899, leave a deep ditch or gully where such snow or ice had been so removed, with high and steep sides, in or near the center of said street, so as to render travel upon such street at the point where the alleged injury to plaintiff occurred unsafe or dangerous for public travel? Yes. (5) If you answer question No. 4 'Yes,' then was the leaving of such ditch or gully, with high and steep sides, by the defendant railway company, the proximate cause of the plaintiff's injury? Yes. (6) Was the plaintiff, at the time and place when the alleged

injury occurred, in the exercise of ordinary care and prudence in attempting to cross the railway track at the point in question? Yes.   (7) If you answer question No. 6 'No,' then was such failure to exercise ordinary care and prudence the proximate cause of the plaintiff's injury? Not answered. (8) If it shall finally be determined that the plaintiff is entitled to recover, at what sum do you assess her damages? $1,000."

Judgment was rendered upon this verdict in favor of the plaintiff, and the defendant appeals.

For the appellant there was a brief by *Woodward & Lees,* and oral argument by *G. M. Woodward.*

For the respondent there was a brief by *McConnell & Schweizer,* and oral argument by *C. H. Schweizer.*

WINSLOW, J.   The case was submitted to the jury upon a special verdict, and the court gave the jury, against proper exceptions, instructions which plainly told them the legal effect of their answer upon the question of contributory negligence.   For this reason there must be a reversal of the judgment, irrespective of any other question.   *Musbach v. Wis. C. Co.* 108 Wis. 57.

Although there must be a new trial for the reason given, we deem it proper to consider the two main questions presented by the record, as they will doubtless arise again upon the second trial:   These questions are (1) whether there was any testimony tending to show negligence on the part of the defendant; and (2) whether the plaintiff appears to have been guilty of contributory negligence, as a matter of law.

1. The city ordinance granting to the defendant company its street franchises provides, as stated in the statement of facts, that the company shall not allow snow or ice to accumulate upon its tracks in such quantities as to obstruct travel, nor deposit snow upon the street in such manner as to obstruct travel or render the same unsafe.   The defendant claims that the complaint in this action charges negligence

only in the violation of the ordinance, and that the jury, in answer to questions 1, 2, and 4 of the special verdict, having found that there was no accumulation or deposit of snow in violation of the ordinance, but only a *removal* of snow, against which the ordinance does not in terms provide, there is really no negligence proven in the case.

While the complaint sets forth the ordinance requirements in detail, and charges their violation, we think it also charges something more. By the last clause of the third subdivision of the complaint it is charged, in substance, that the defendant negligently caused the snow and ice on its track to be *excavated and removed* in such manner as to leave a deep ditch, rendering the street unsafe and dangerous for public travel. We can construe this as meaning nothing more or less than a breach of the common-law duty not to render the street unsafe for travel, which is manifestly wholly independent of the provisions of the ordinance. It is argued, however, that there is no such common-law duty, but that the defendant's obligations to the public are measured by the requirements of the ordinance. With this contention we cannot agree. Even in the absence of any requirements in the ordinance upon the subject, it must be held that when the defendant company received its franchise to operate a street railway upon the streets for its private gain, as well as the public convenience, it at the same time assumed a duty to the public not to unnecessarily render ordinary travel on the street dangerous. It must exercise its rights with due deference to the rights of the general public. It has no license to build and operate its tracks with total disregard of the rights and safety of the man with the horse and wagon, or the woman with the horse and cutter. On this subject the Messrs. Elliott, in their work on Roads & Streets (2d ed. § 764), say very aptly:

"A street railway company which accepts a grant or a license impliedly agrees that it will use due care not to unnecessarily impede travel or to make the use of the street haz-

ardous.    The burden which it assumes in conjunction with
the benefit which it obtains is a continuing one, and it must
bear it, though to do what due care and diligence requires
may somtimes entail considerable expense.  .  .  .    Where
the track is cleared for its own convenience, it must do what
is reasonably necessary to make the part of the street not oc-
cupied by its tracks reasonably safe, for it cannot for its own
accommodation obstruct it so as to endanger travelers."

We accept these propositions as correctly stating the law.
It is said that to require the company to remove any part of
the snow from the street outside of its tracks is an undue bur-
den, involving, perhaps, great labor and expense; but, as
pointed out above, the company, by accepting its franchise,
assumed a duty to the public, and any disposition which it is
obliged to make of falling snow in order to run its cars must
be such a dispositon as preserves the rights of the public to
have a reasonably safe street for ordinary travel.    If the pub-
lic right can be preserved by simply brushing the snow to one
side, well and good; but if the snow is so deep that the right
can only be preserved by removing the snow from its tracks
and from such additional space outside thereof as is neces-
sary to prevent the formation of a dangerous declivity, then
the company must make such removal.    Any disposition
which it makes of the snow must be made with due deference
to the rights of travel upon the highway.    *Wallace v. Detroit
City R. Co.* 58 Mich. 231; *Smith v. Nashua St. R. Co.* 69
N. H. 504.

The evidence in this case was entirely sufficient to call for
the submission of the question to the jury whether the com-
pany, in the removal of the snow from its track, left a de-
clivity on the north side of its track which rendered the street
unsafe for public travel.

2. The question of contributory negligence was also one
for the jury.    It is said in the appellant's brief that it is not
contended that plaintiff was guilty of contributory negligence
from the mere fact that she attempted to cross the track where

she did, but that the danger being in plain sight, and her attention not being diverted, she was negligent in attempting to drive across at a sharp angle, when it would have been perfectly safe to drive straight across. So the claim is that she was negligent only in not driving across at the proper angle. On this subject the plaintiff testified that she turned to go over the track, and drove slow over the track, and tipped over; that she drove just as straight as she could,—pretty near straight across the track. And, at request of defendant's counsel, she drew a line upon paper, or upon some diagram present at the trial, showing the way she went across the track; but this paper has not been preserved in the bill of exceptions, and hence we have not the benefit of it. This testimony tends to show that the plaintiff exercised some degree, at least, of additional care, in attempting to cross the track. It has been held in numerous cases in this and other courts that a traveler driving upon a highway is not necessarily guilty of contributory negligence because he attempts to pass over or around a defective place of which he has knowledge. The defect may be so serious or dangerous that a court would be justified in saying that any attempt to proceed would be negligence, but in all other cases the question is whether a reasonably prudent man, exercising ordinary care, would attempt to proceed under the circumstances, and, if so, whether the plaintiff used that additional care which such a man would exercise in view of his knowledge of the danger. *Kelley v. Fond du Lac,* 31 Wis. 179; *Kenworthy v. Ironton,* 41 Wis. 647; *Mahoney v. Metropolitan R. Co.* 104 Mass. 73; *Thomas v. Western Union T. Co.* 100 Mass. 156. It must appear, in order to justify a finding of due care in such a case, that the traveler exercised such care as persons of common and reasonable prudence would ordinarily exercise under such circumstances; that is, a degree of care proportionate to the increased danger. If the danger is such as to

require unusual precautions, the traveler must use such precaution.   Elliott, Roads & S. (2d ed.), § 635.

Tested by this rule, we must say that the apparent danger was not so great as to justify the court in saying that the. plaintiff was guilty of contributory negligence, as matter of law, in attempting to cross the track, but that the question whether the plaintiff exercised ordinary care in making the attempt, in the manner in which she did make it, was a question for the jury, under proper instructions.

There is a very plain line of distinction between a case like the present and the case of foot passengers who are injured by reason of seen and known defects in or upon a sidewalk. In the latter class of cases, of which *Hausmann v. Madison,* 85 Wis. 187, and *Devine v. Fond du Lac, ante,* p. 61, may be considered typical, it has been held that a traveler upon a sidewalk, who sees a defect before him, such as a piece of ice or a slippery or uneven stone, and walks upon it without necessity, and taking no precautions for his safety, is guilty of contributory negligence. The foot passenger has absolute control over his movements, may stop and turn aside at will and without danger, and hence may properly be held to a strict rule of accountability under such circumstances. But the traveler with a horse and wagon or sleigh is in an entirely different situation. His movements may not, indeed cannot,. be absolutely free. His equipage cannot be turned in a moment away from danger. His view is not only not so clear,. but his attention may be necessarily occupied with the handling of his horse, and many circumstances may be present which will be entitled to be considered in judging of the degree of care which he exercises, which cannot be present in the case of the foot passenger upon a sidewalk. We have drawn attention to the line of cases last mentioned simply for the purpose of pointing out the distinction between them and the present case, without intimating, however, that there may not be cases of foot passengers who will be justified in at-

tempting to pass over a known defect in a sidewalk, if it is shown that they took some precautions fairly commensurate with the increased risk. *Richards v. Oshkosh,* 81 Wis. 226; *Salzer v. Milwaukee,* 97 Wis. 471.

We think the questions submitted by the court to the jury fairly cover the issues in the case, and we have found no prejudicial errors in the record, save the error first referred to in this opinion, and for this there must be a reversal..

*By the Court.*—Judgment reversed, and action remanded for a new trial.