TANNER, Respondent, vs. TOWN OF RUSHFORD, Appellant.

*April 12—May 2, 1916.*

*Highways: Bridges: Insufficiency: Injury to horse: Proximate cause: Questions for jury.*

1. In an action for injury to plaintiff's horse alleged to have been caused by its catching the toe-calk on one of its shoes in a crack between the planks forming the roadway of a bridge, there being evidence that the planks were laid crosswise and that there were cracks from a quarter of an inch to more than an inch between them, the question whether such cracks constituted an insufficiency rendering the bridge not reasonably safe, and also the question whether plaintiff was guilty of a want of ordinary care in attempting to drive across it, were for the jury.
2. A finding by the jury in such case that the injury to the horse, involving a fracture of the ilium and lameness, was proximately caused by the unsafe condition of the bridge is *held* to be sustained by the evidence.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge.    *Affirmed.*

This is an action for injuries to plaintiff's horse resulting from a defective bridge.    The alleged defect consisted in the fact that the planks forming the roadway of the bridge were placed so far apart as to leave wide cracks running crosswise

of the bridge from a quarter of an inch to more than an inch in width.    The testimony tended to show that on the morning of December 30, 1913, the plaintiff's mare, while being driven across the bridge by an employee, caught the toe-calk of the shoe on the hind foot in one of these cracks, causing her to stop suddenly and bringing the foot back under the whiffletrees of the wagon; that the mare then pulled the foot out and went along; that no immediate lameness appeared, but that during the forenoon, while hauling sand, she was observed to be lame, and was very lame on the following day, and remained unable to work for sixty days.    There was also testimony tending to show that the mare had a fractured ilium and that such a result might naturally follow such an occurrence.

The jury returned the following special verdict:

"(1)  Was the plaintiff's horse injured on the said bridge at the time and place alleged in the complaint ?    A. Yes.

"(2)  Was the said bridge in an insufficient condition and in want of repair so as not to be reasonably safe for the passage of teams over it at the time of said accident ?    A. Yes.

"(3)  If you answer question 2 'Yes,' then was such condition the proximate cause of the injury to plaintiff's horse ? A. Yes.

"(4)  If you answer question 2 'Yes,' did the defendant town have notice of the insufficient condition of said bridge in time to have repaired the same in the exercise of ordinary care and prudence ?    A. Yes.

"(5)  Was the plaintiff guilty of a want of ordinary care and prudence which contributed to said injury ?    A. No.

"(6)  If the plaintiff is entitled to recover, at what sum do you assess his damages ?    A. $230."

From judgment for the plaintiff on the verdict the defendant appeals.

*Wilbur E. Hurlbut,* for the appellant.

For the respondent there was a brief by *Williams & Williams,* and oral argument by *Charles H. Williams.*

WINSLOW, C. J. The special verdict covers fairly and fully all the issues in the case and we find it necessary to consider but three contentions, viz.: *first,* that no actionable defect in the bridge was proven; *second,* that if any defect was proven the plaintiff was guilty of contributory negligence in sending his team across the bridge when he knew of the defect; and *third,* that the evidence fails to show that the defect in the bridge caused the injury. These questions will be briefly treated in the order stated.

1. This question is somewhat close. Towns do not insure. safety on roads or bridges and not every departure from the safest methods can be called a defect. Ordinarily, however, it is a jury question under proper instructions.

There can be little doubt, we think, that the long and substantial calks which are necessarily placed upon the shoes of a horse in winter are quite likely to be caught and wedged into such cracks as existed in the roadway of this bridge. It goes without saying that when a horse's foot is thus suddenly caught and held, the wrench thereby resulting may easily cause a temporary or permanent injury to the horse. It is clear from the evidence that the difficulty is avoided in many bridges either by laying the planks close together or by laying them longitudinally or diagonally. We are unable to say as matter of law that there was no actionable defect in the present instance.

2. The defect here was not of so serious or dangerous a character as to render any attempt to cross the bridge palpable negligence; in other words, the danger was not imminent. In such cases the question is whether a reasonably prudent man, exercising ordinary care, would attempt to proceed, and this question is for the jury. *Gerrard v. La Crosse City R. Co.* 113 Wis. 258, 89 N. W. 125; *Dralle v. Reedsburg,* 130 Wis. 347, 110 N. W. 210.

3. The evidence justifies the conclusion that the fracture of the ilium and the lameness were the result of the wedging

of the toe-calk in the crack and the sudden stopping of the horse's progress thereby. It appeared that the lameness was first noticed a short time afterwards, that it rapidly grew worse, and that the sixty days' disability followed without interruption in the symptoms. Probably the jury would have been justified in finding that the injury resulted from a strain incurred while hauling sand after the bridge incident, but this was a question for them to decide. A number of detail errors are alleged, none of which are considered to be of sufficient importance to demand special treatment.

*By the Court.*—Judgment affirmed.