PRATT, Respondent, vs. PECK and another, Appellants.

*January 17 — January 31, 1888.*

*Sale of chattels: Delivery: Acceptance: Instructions to jury.*

In an action to recover the purchase price of lumber which had been sawed and piled up in the plaintiff's yard according to contract, but which had been burned before its removal by the defendants, an instruction to the jury that "if the lumber was piled and notice thereof given to the defendants, and the defendants did not, within a reasonable time after notice, notify the plaintiff of their refusal to accept a delivery, an acceptance or delivery may be presumed or inferred from the failure of the defendants to give notice of their refusal, and ought to be so inferred," is *held* to have been correct.

APPEAL from the Circuit Court for *Outagamie* County.

Action to recover the balance due on a contract for lumber sold and delivered. The facts are stated in the opinion. The defendants appeal from a judgment in favor of the plaintiff.

For the appellants there were separate briefs by *Weisbrod, Harshaw & Nevitt,* attorneys, and *S. U. Pinney,* of counsel, and the cause was argued orally by *Mr. Pinney* and *Mr.*

*A*: *W. Weisbrod.* To the point that the trial court erred in its instruction as to the effect of the defendants' failure, within a reasonable time, to notify the plaintiff of their refusal to accept a delivery, *Mr. Pinney* cited Benj. on Sales, sec. 162; *Parker v. Wallis,* 5 Ellis & Bl. 21; *Smith v. Hudson,* 6 B. & S. 431; *Cunliffe v. Harrison,* 6 Exch. 903; Blackburn on Sales, secs. 164, 165; *Borrowscale v. Bosworth,* 99 Mass. 381; *Morton v. Tibbett,* 15 Q. B. 428; *Remick v. Sanford,* 120 Mass. 309, 316; *Hewes v. Jordan,* 39 Md. 472; *Johnson v. Cuttle,* 105 Mass. 447; *Knight v. Mann,* 118 id. 143; *Walrath v. Ingles,* 64 Barb. 274–277; *Bacon v. Eccles,* 43 Wis. 227.

*Gabe Bouck,* for the respondent, cited, upon the question of acceptance, Browne on Stat. of Frauds, secs. 321, 321*b*, 321*e;* Benj. on Sales, secs. 144, 170, 1015; *Barton v. Kane,* 17 Wis. 38; *Paige v. McMillan,* 41 id. 337; *Kahn v. Klabunde,* 50 id. 235; *Olson v. Mayer,* 56 id. 551; *Wartman v. Breed,* 117 Mass. 18; *Phillips v. Moor,* 71 Me. 78; *Hirshhorn v. Stewart,* 49 Iowa, 418; *Callaghan v. Myers,* 89 Ill. 566; *Blenkinsop v. Clayton,* 7 Taunt. 597; Wood on Frauds, sec. 315; *Brown v. Wade,* 42 Iowa, 647.

ORTON, J.    The plaintiff was a manufacturer of lumber in the city of Oshkosh, and the defendants were manufacturers of sash, doors, and blinds, on the opposite side of the street.    About the 9th day of August, 1883, the defendants bought of the plaintiff 600,000 feet 'of plank, partly seasoned and then piled up in the plaintiff's mill-yard, and 400,000 feet of the same kind of lumber, to be sawed and to be piled up in the plaintiff's yard in the same manner, but in another place nearer the defendants' factory. The terms of the bargain were that the defendants should pay for said lumber at the rate of $14 per thousand for shop common, $24 per thousand for third clear, and $34 per

thousand for first and second clear.  For the 600,000 feet then piled up; the defendants were to pay the plaintiff in ten days, and for the 400,000 feet, to be sawed and so piled up, in ninety days, and if the plaintiff should wish to use the defendants' paper for the 400,000 feet before it was due, that he should have it, and the interest thereon should be charged back up to the time it was due.  The 600,000 feet was to ·be hauled at once to the defendants' yard by the plaintiff, and the 400,000 feet was to be piled up loosely, so that it could dry, and was not to be hauled by the plaintiff until the next spring.  Both parties agree that this was the contract.  The plaintiff commenced hauling the dry lumber at once, and continued to haul until October 14th following, when the defendants' factory was burned, and had hauled 334,000 feet, and afterwards, by the direction of the defendants, 143,000 feet was hauled to Gould's mill, in Oshkosh, and the balance was burned up in the plaintiff's yard.  The defendants paid the plaintiff, by September 1st, $10,000, and afterwards the balance was paid for the dry lumber.  The 400,000 feet was sawed and piled up in the place so designated in the plaintiff's yard, and near the defendants' office, and marked with the defendants' initials, by October 1st, and notice thereof was given to the defendants.  At the time of the purchase, the piles of dry lumber were estimated and marked, and afterwards exactly measured when hauled.  On the 15th day of November, the plaintiff's mill was burned, and the largest part of the 400,000 feet.  The plaintiff testified, and the jury were authorized to find, that the defendants were frequently on the piles of the green lumber while it was being sawed, and knew the kinds and quality of the lumber, and that after the greater part of the green lumber was so burned, the defendants tried to have the plaintiff let them off from their purchase of it, and on his refusal to do so they authorized

him to sell the remnant for them at the best rate he could get, and he did so sell it, and credited the defendants with what he received therefor.

This action is brought to recover the balance due for the 400,000 feet. The defense is that which is not uncommon in such cases where the property has been burned, that, at the time of the burning, the 400,000 feet, or any part of it, had not been delivered to the defendants or accepted by them. The case has been tried twice, and judgment rendered for the plaintiff. The evidence on both trials was substantially the same. From the first judgment an appeal was taken to this court, and the judgment reversed on the sole ground that the jury failed to find upon the only material issue, whether the 400,000 feet had been delivered or accepted before the fire. 65 Wis. 463. On the last trial, the jury found, in answer to the ninth question, that "there was a delivery of this 400,000 feet of lumber tendered by by the plaintiff to the defendants about October 1, 1883; " and to the tenth question, that "the defendants accepted the delivery of that lumber; " and to the eleventh question, that "it was the intention of both parties, and the agreement between them, that the title to this 400,000 feet of green lumber should pass to the defendants upon the lumber being piled and marked by the plaintiff and notice thereof given to the defendants." These findings fully supply the defects of the former verdict, and answer the requirements of the former decision. The two trials of this case, and the arguments upon the law upon both appeals, have been most ably conducted by the very ablest of lawyers on both sides, and the case is both important and interesting. But we cannot but think that the grounds of the controversy have been somewhat magnified, and the questions are very technical. The law is so well settled in this class of cases as to be almost, if not quite, elementary. In such a case there is no need of stumbling upon the technical terms " *delivery*

and *acceptance.*" No question is made of the kinds, quality, or amount of the lumber so piled up in the plaintiff's yard, and there could not well be any question of that kind, for the plaintiff proved that the lumber, in all respects, was according to the contract. It is important to know what the contract was, and how the parties evidently understood it to be. It cannot be that this lumber was to remain the property of the plaintiff until it was hauled to the defendants' factory, for the whole consideration was to be paid within ninety days from the time the lumber should be sawed and piled up in the place designated, and the hauling was not to be done *until the next spring.* In the mean time the lumber was drying in the plaintiff's yard, for the sole benefit of the defendants. If the ninety days credit was to commence from the piling of the lumber in the place where the defendants wished it to be piled, then it follows that *then* was the time the defendants were to own the lumber. It is a close question whether the ninety days did not commence at the time of the purchase, the same as the ten days for the dry lumber. But giving the defendants the benefit of having the ninety days commence at the time the green lumber is piled up according to the contract, it certainly could not be later than that. This is a *contract* as well as a *sale.* The plaintiff performed it to the fullest extent possible on his part when he piled the lumber in the place designated and marked it and notified the defendants thereof. But it is said that the lumber had not been inspected to ascertain the quality and quantity. Whose fault was it that it was not inspected? The plaintiff could not *compel* the defendants to inspect it, or to come and expressly accept it. Could they delay or refuse to inspect it, and thereby postpone the payment, or, by such delay or refusal, postpone or destroy the obligation to pay for it? Most certainly not. The lumber was to remain in the yard of the plaintiff, piled loosely so as to dry, and remain there from

October 1st until the next spring, for the mere accommodation of the defendants. It was drying for their benefit. Suppose there had been no burning, and after the defendants were notified that the lumber was ready for them, piled and marked, and the defendants had delayed to expressly accept it, or to pay any attention to it, at the expiration of the ninety days after that is there any doubt that the plaintiff could have sued the defendants for the money and have recovered? So he may recover now. The burning could make no difference in the liability, if it did in the disposition, of the defendants to pay for it according to the contract. The defendants placed this practical construction upon the contract (which is entire) when they estimated the dry lumber in the pile and paid for it accordingly. Then, as a matter of mere contract, without reference to the technical questions of delivery and acceptance, the plaintiff had fully performed his part of the contract, and was therefore entitled to the consideration agreed to be paid by the defendants. In such a very clear case we shall not place much stress upon the mere technical question whether the lumber was actually delivered by the plaintiff or accepted by the defendants, as in other cases not applicable.

On the *merits* of the case, we are not asked to disturb the verdict, but certain errors of the trial court are alleged, which the learned counsel of the appellants claim affected the merits of the case or misdirected the jury.

We have carefully examined the exceptions, and we cannot find that any of them were material to the merits and real justice of the case, except, perhaps, that one relating to the charge of the court as to the effect of the notice to the defendants that the lumber was ready for them, piled and marked, and the legal effect of the defendants' delay in expressly accepting or rejecting the same for an unreasonable time. That instruction was as follows: "If the lum-

ber was piled and notice thereof given to the defendants, and the defendants did not, *within a reasonable time* after notice, notify the plaintiff of their refusal to accept a delivery, an acceptance or delivery may be presumed or inferred by the jury from the failure of the defendants to give notice of their refusal, *and ought to be so inferred,* and in that case your answer to question No. 10 should be 'Yes.'" This "silence and delay" may be found in some other parts of the charge excepted to. To show that this instruction is erroneous, the learned counsel of the appellants cite the language of Mr. Benjamin, in his work on Sales, as follows: "The fair deduction from the authorities seems to be that this is a question of degree; that *a long and unreasonable delay* would afford *stringent* proof of acceptance, while a shorter delay would merely constitute *some* evidence to be taken into consideration *with the other circumstances of the case.*" It would seem that this authority sanctioned the instruction. "Unreasonable delay," and refusal to accept "*within a reasonable time,*" would seem to be substantially alike.* Beyond a reasonable time is unreasonable delay. If the delay is not reasonable, it is unreasonable. The delay is "*stringent* proof of acceptance." This text is sustained by the cases cited by counsel. In application to the facts of this case, we think the instruction was strictly correct. This instruction is directly approved by the decision in the case of *Mason v. H. Whitbeck Co.* 35 Wis. 167, and many other cases in this and other courts. The learned counsel of the respondent cites many cases to the same effect, to which reference may be had. But this case is too plain to burden this opinion by the citation of many authorities, and it has already occupied much space in the reports. The fires which burned the defendants' factory and the plaintiff's mill and much of this lumber were most unfortunate, and the case is a hard one for

JANUARY TERM, 1888. 627

the defendants; but it must be a hard one to one of the parties in any event; but this should not press the courts into the establishment of unsound legal principles.

We find no error in the record which ought to reverse the judgment.

*By the Court.*— The judgment of the circuit court is affirmed.