BADGER TELEPHONE COMPANY, Respondent, vs. WOLF RIVER TELEPHONE COMPANY, Appellant.

*November 20, 1903—January 12, 1904.*

*Trials: Election between counts: Immaterial error: Corporations: Sales: Telephone companies: Statute of frauds: Estoppel: Authority of officer.*

1. In an action by one telephone company against another to recover the value of the plant of the former alleged to have been sold to the latter, it is not error to refuse to require the plaintiff to elect whether it will go to trial upon a count based upon *quantum meruit,* or upon a count alleging that defendant

agreed to make payment therefor in a certain number of shares. of its capital stock, and that it had failed and refused to deliver such stock, or pay the value thereof in cash.

2. Where a verdict is properly directed in favor of the plaintiff upon evidence properly in the case, the defendant is not prejudiced by the admission or retention of improper evidence.

3. Where property, for the purchase price of which action is brought, has been delivered to the defendant by the plaintiff more than two years before the commencement of the action, and the defendant has received the same and appropriated it to its own use, the defense that the contract of sale was void under the statute of frauds cannot be maintained.

4. Under secs. 1775 and 1775a, Stats. 1898, one telephone company may take, own, hold and enjoy any right, privilege, or franchise theretofore owned by another such company.

5. Where possession of the property of one corporation had been fully delivered to and received and accepted by another, which retained the property and had the use thereof for years, the latter, in an action against it to recover the value of such property, is estopped from claiming any want of authority in the board of directors of the former to make the transfer through one of its officers.

APPEAL from a judgment of the circuit court for Waushara county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

This action was commenced January 31, 1902, to recover $1,500, the alleged purchase price of a telephone exchange and its franchise in Waupaca, and all posts, poles, wires, telephones, and other apparatus connected therewith, and other property described, sold and delivered by the plaintiff to the defendant, at its request, January 18, 1900, then and there reasonably worth $1,500, and which amount the defendant then and there agreed to pay therefor, but no part of which had been paid. In a separate count the complaint alleges that the defendant then and there agreed that, in consideration of the property so sold and delivered to the defendant by the plaintiff, the defendant would execute and deliver to the plaintiff, or to such party as the plaintiff should designate, thirty shares of the capital stock of the defendant corporation, of the par value of $50 each, amounting to $1,500,

and that the same then and there had an actual value of
$1,500; that, although the defendant had actually received
and held possession of the property so purchased by it from
the plaintiff, yet the defendant, though often requested, had:
neglected and refused to transfer to the plaintiff such stock.
as so agreed, and had continued to so refuse, or to pay to the·
plaintiff the cash value of the stock. The defendant answered
by way of a general denial, and also set up a counterclaim of·
$300 damages for an alleged breach of a written contract
executed January 15, 1896, in regard to building a telephone·
exchange between Waupaca and Weyauwega. The plaintiff·
replied to the counterclaim.

At the close of all the testimony, the defendant, in open·
court, abandoned all claim to any affirmative relief on its.
counterclaim, and moved the court to direct a verdict in favor
of the defendant upon grounds stated, but which was denied
by the court. Thereupon the court, on motion of the plaintiff,.
directed the jury to find a verdict in favor of the plaintiff,
and assess its damages at $1,500, which the jury did accord-
ingly. Thereupon judgment was entered upon such verdict
in favor of the plaintiff for the amount stated, with costs and
disbursements, taxed at $89.01.

From the judgment entered thereon for such damages and·
costs, the defendant appeals.

*Charles M. Sanborn* and *Wilbur E. Hurlbut,* for the appel-·
lant.

*John J. Wood, Jr.,* for the respondent.

CASSODAY, C. J. We perceive no reversible error in re-
fusing to compel the plaintiff to elect which count it would·
go to trial upon. The only difference in the two counts is
that in the one it is alleged that the property sold to the de-
fendant was reasonably worth $1,500, which the defendant
then and there agreed to pay therefor, and in the other that
the defendant agreed to make such payment therefor in thirty·

shares of the capital stock of the defendant corporation, of the par value of $50 each, amounting to $1,500, and then and there having an actual value of $1,500, and that the defendant had failed and refused to transfer and deliver the stock, or to pay to the plaintiff the value thereof in cash. They both arise out of the same transaction, and in fact the same contract, and seem to satisfy all the requirements of the statutes. Sec. 2647, Stats. 1898; *Beers v. Kuehn,* 84 Wis. 33, 54 N. W. 109; *Reindl v. Heath,* 109 Wis. 570, 85 N. W. 495.

A number of errors are assigned for the improper admission of testimony and the refusal to strike out testimony. The question here presented is whether the verdict was properly directed in favor of the plaintiff. If the evidence, properly admitted, was sufficient to take the case to the jury, then the judgment must be reversed, regardless of the question whether any evidence was improperly admitted or retained. If the verdict was properly directed in favor of the plaintiff, upon evidence properly in the case, then the defendant was in no way prejudiced by the admission or retention of improper testimony.

It is undisputed that in December, 1899, the plaintiff was the owner and in possession of the telephone exchange, franchise, posts, poles, wires, telephones, and other apparatus mentioned in the complaint; that at that time one John Boyson was a director and the vice-president and treasurer of that company, and had for a considerable time been the managing agent for the plaintiff's board of directors in the control and management of said property, and was orally authorized by the other directors of that company to sell and dispose of all such property. One A. L. Hutchinson testified to the effect that he was the treasurer, director, and general manager of the defendant company; that the two companies had exchanged business up to December, 1899; that he conversed with Boyson at different times in the latter part of December, 1899, and the forepart of January, 1900, in re-

gard to the terms upon which the plaintiff would sell and dispose of its properties; that he did so for the purpose of getting the proposition before the defendant's directors at their annual meeting January 18, 1900; that John Boyson, representing the plaintiff, was present at that meeting with the defendant's president, secretary, and treasurer, and other directors; that the substance of the conversation was that the plaintiff would sell its part of the toll line between Weyauwega and Waupaca—the toll line from Waupaca to Poysippi by way of Veteran's Home and Pine River, and exchange and franchise in Waupaca; and that "the terms of the proposed purchase were agreed to;" that the terms agreed upon "at that time were to be put in writing and signed by the officers of the two companies;" that he "was to prepare the writing, and did so;" and two copies of the same were identified by the witness and in evidence. They are both dated January 18, 1900, and appear to be substantial duplicates of each other, except that the one signed by the president and secretary of the plaintiff contained, near the end and just before the attestation, this clause: "The said *Badger Telephone Company* is to have free use of the line between Poysippi and Pine River and the second party to make and keep connections suitable for same purpose;" whereas that clause was not in the one signed by the president of the defendant, but was on a rider or paster attached thereto. That agreement is to the effect that, for the consideration thereinafter mentioned, the plaintiff thereby sold, released, and transferred to the defendant the property described, to have and to hold forever, and thereby agreed to warrant and defend the defendant against any and all claims then existing against the plaintiff; and the defendant therein agreed to execute and deliver to the plaintiff, or such person as it might designate, thirty shares of the capital stock of the defendant company, of the par value of $50 each, amounting to $1,500, the same to be delivered at the time of executing the contract. The

stock certificate bears the same date, and was signed by the defendant's president and secretary, and is to the effect stated.

There appears to have been some controversy as to whether the contents of the slip or paster so attached to the contract were to be a part thereof, and as to whether it should be written in the contract, or left so attached. The matter of exchanging such contract in duplicate appears to have been delayed until June 14, 1901, when the plaintiff requested the defendant to sign the contract, with the contents of the slip or paster written therein, but which the defendant, a week afterwards, refused to do. In July, 1901, the plaintiff demanded a settlement from the defendant for the property so sold and delivered to it. The defendant refused to do so by reason of the plaintiff's delay, and its final refusal to sign the contract with the contents of the slip or paster left out, and for the further reason that the plaintiff had failed to keep and perform the contract of 1896 alleged in the defendant's answer. It is undisputed that immediately after the proposed written contract was drawn by Hutchinson, January 18, 1900, all the operators of the property were directed to turn the same over to the defendant. Hutchinson testified in behalf of the defendant that the result of the conversation between Boyson and the defendant's board of directors, January 18 or 19, 1900, was that the defendant should take possession at once; that he was to notify the officers and agents of the plaintiff that the defendant had bought the property and was to take possession at once and begin to receive the tolls; that the contract was closed, and, as general manager, he sent out notices to that effect; that he sent circular letters to such different operators to the effect that the property had been transferred to the defendant, and that thereafter all remittances should be made to the defendant; that such remittances were thereafter made to the defendant; that during the summer of 1900 the defendant wrote letters to different patrons, agreeing to repair different parts of the property so

transferred to it; and that he supposed the contract to have been consummated until informed differently the last of August, 1900.

Thus it appears from the undisputed evidence that on or about January 19, 1900, the property in question was delivered by the plaintiff to the defendant, and the defendant received and accepted the same, and appropriated the same to its own use. This being so, there is no ground for claiming that the transfer was void under the statute of frauds (sec. 2308, Stats. 1898). *Mason v. H. Whitbeck Co.* 35 Wis. 164; *Bank of River Falls v. German Am. Ins. Co.* 72 Wis. 535, 40 N. W. 506; *Pratt v. Peck,* 70 Wis. 620, 36 N. W. 410; *Ashland L., S. & C. Co. v. Shores,* 105 Wis. 128, 81 N. W. 136. Under our statute the defendant was authorized to take and acquire by purchase or assignment, and thereafter own, hold, and enjoy, any right, privilege, or franchise theretofore owned by the plaintiff. Secs. 1775, 1775a, Stats. 1898; *State ex rel. Badger I. Co. v. Anderson,* 97 Wis. 114, 72 N. W. 386. As indicated, the possession of the property was fully delivered to, and received and accepted by, the defendant. The defendant retained such possession and had the use and benefit thereof for years, and converted a portion thereof to its own use. These facts are undisputed, and, being so, the defendant is estopped from claiming any want of authority in the plaintiff's board of directors to make the transfer through its vice-president, treasurer, and director, Boyson. In view of the admitted facts and circumstances mentioned, it may be fairly presumed that even the stockholders of the respective corporations acquiesced in, if they did not expressly authorize or ratify, the transfer of the property in question. *Marvin v. Anderson,* 111 Wis. 392, 393, 87 N. W. 226, and cases there cited; *Consolidated W. P. Co. v. Nash,* 109 Wis. 497, 85 N. W. 485; 2 Cook, Stock & Stockholders (3d ed.) §§ 728–733. It is undisputed that before the commencement of this action the plaintiff demanded a

transfer of the stock in settlement for the property so trans-
ferred. The defendant's witness, Hutchinson, testified to the
effect that the defendant was to pay for the property by issu-
ing thirty shares of stock at $50 a share; that defendant
made out the certificate of stock, but never delivered it; that
that stock was worth par at the time of the agreement—
$1,500 in cash; and that it has not been worth less at any
time since.

We must hold that the verdict was properly directed in
favor of the plaintiff.

*By the Court.*—The judgment of the circuit court is af-
firmed.