LYTTLE, Respondent, vs. GOLDBERG and others, Appellants.

*April 13—April 30, 1907.*

*Married women: Release of interest in land: Validity of promise to pay therefor: Statute of frauds: Attorneys at law: Champerty: Evidence: Instructions to jury: Special verdict: Mistake: Improper remarks of counsel: Reversal or modification of judgment: Reduction of damages: Costs on appeal: Real-estate brokers: Commissions.*

1. A fully executed release by a married woman of her interest (even inchoate) in real estate is a sufficient consideration for a promise to pay a sum of money for such release, and neither her marital status nor the statute of frauds presents any obstacle to the validity of such promise.
2. Undisputed evidence of plaintiff's complete poverty does not necessarily establish a champertous agreement on the part of her attorneys to assume the burden of the litigation.
3. The fact that the jury were instructed to answer questions in the special verdict one way or another accordingly as they adopted the "claim of the plaintiff" or "the claim of the defendants" does not necessarily require a reversal where it appears that the jury must have understood the effect of their answers without any such suggestion; but such method of instruction is not to be approved.
4. Nor does a reversal necessarily result from the fact that in respect to one question the court by mistake ascribed plaintiff's contention to the defendants, and defendants' to the plaintiff.
5. Remarks of plaintiff's counsel in argument to the jury, referring to his client's poverty, and other remarks apparently intended to prejudice and inflame the jury against defendants, are criti-

cised, but whether by themselves they would necessitate a reversal is not decided.

6. Where the prejudicial effect of errors in the charge or of improper remarks of counsel can be obviated by a reduction of the amount of plaintiff's recovery, the supreme court on appeal may make such reduction and affirm the judgment as modified accordingly, instead of reversing and remanding for new trial.

7. Upon modification and affirmance of the judgment in such a case the appellant is allowed to recover costs on the appeal.

8. Traveling expenses of brokers in connection with a sale of land and compensation paid by them to a subagent are *held* to have been covered and compensated by their agreed commission of a specific amount on the sale.

APPEAL from a judgment of the circuit court for Shawano county: JOHN GOODLAND, Circuit Judge. *Modified and affirmed.*

Action to recover moneys due under an alleged contract whereby, in consideration of the plaintiff's joining in a warranty deed of conveyance of her husband's farm, the defendants agreed to sell said farm and certain personal property received therewith, and, after retaining a commission of $100, to pay to the plaintiff all excess above the amount of the indebtedness against said property. The defendants denied such contract and claimed that the plaintiff had executed such conveyance in consideration of the sum of $50, which had been paid her in full. The case was tried to a jury and a special verdict returned as follows:

"(1) Did the plaintiff, *Louisa Lyttle,* agree with the defendants to accept $50 in full payment for her interest in and to the farm and personal property? *A.* No. (2) If you answer the first question by 'Yes,' you need not answer any other question. If you answer the first question 'No,' then answer the following question: Did the defendants agree with the plaintiff that if she released all her interest in and to the farm and personal property they would sell the farm and personal property for the best price obtainable, pay off certain indebtedness, retain $100 for their commission, and pay the balance, if any, to the plaintiff? *A.* Yes. (3) What sum

did the defendants receive from the purchaser of said farm and personal property? *A.* (by the court) $2,800. (4) What was the amount of the indebtedness which the defendants paid or canceled under their agreement? *A.* $1,999.16. (5) What was the value of the personal property, other than that derived from the Lyttles, sold and delivered by defendants to the Sehrings with the sale of the farm? *A.* $334. (6) What was the value of the personal property which the defendants received from the Lyttles which was not included in the sale to the Sehrings and which they retained? *A.* $165. (7) Did the plaintiff sign the bill of sale (Exhibit 3), as claimed by the defendants? *A.* No. (8) Did the plaintiff sign the instrument Exhibit 1, as claimed by the defendants? *A.* No."

The defendants had moved for a nonsuit and for direction of a verdict, and, after its rendition, moved to reverse the answers to the first, second, seventh, and eighth questions and to change the answer to the fifth question to $644 and to the sixth question to $20; which motions being overruled, judgment for the plaintiff was entered for $702.93 damages, together with costs, from which the defendants appeal.

For the appellants there was a brief by *Wigman, Martin & Martin,* and oral argument by *P. H. Martin.*

For the respondent there were briefs by *Eberlein & Eberlein,* and oral argument by *M. G. Eberlein.*

DODGE, J. As a preliminary defense appellants argue that the contract sued on is void both because of plaintiff's incapacity as a married woman and because of the statute of frauds avoiding parol contract for conveyance of any interest in real estate. The contention cannot be sustained. Neither the statute of frauds nor plaintiff's marital status presents any obstacle to the validity of defendants' promise to pay a sum of money upon a sufficient consideration. A fully executed release of her interest in real estate, even inchoate, is such consideration, whether her executory promise so to do would be or not. *Watters v. McGuigan,* 72 Wis. 155, 39

N. W. 382; *Kriz v. Peege,* 119 Wis. 105, 121, 95 N. W. 108; *Morton v. Smiley,* 119 Wis. 156, 96 N. W. 534; *Badger T. Co. v. Wolf River T. Co.* 120 Wis. 169, 175, 97 N. W. 907; *Sykes v. Chadwick,* 18 Wall. 141.

Another preliminary defense is that of champerty and maintenance predicated upon what appellants' counsel considers undisputed evidence that plaintiff's poverty was so complete as to preclude any reasonable expectation on the part of her attorneys that she could pay, or reimburse to them, any expenses or costs that they might advance, except upon the contingency of a recovery in this action. The evidence negatived any express agreement by the attorneys to advance or defray any such costs or expenses, and the testimony of both plaintiff and her attorneys was that she expected to pay them and they expected to be paid, and there was perhaps some evidence of at least her possible ability to pay something. But, even conceding that the evidence of plaintiff's complete poverty was either undisputed or overwhelming, we cannot assent to the proposition that such fact necessarily established a champertous agreement on the part of the attorneys to assume the burden of this litigation. Insolvency or poverty at any time is not absolutely exclusive either of the ultimate payment of honest debts or of the contingency that friends might be willing to aid; or, indeed, that she might be able to obtain, at least in large part, the necessary service of officers and attendance of witnesses by some other means than the advance of fees therefor by her counsel. While the fact of poverty might, in connection with other facts and circumstances, be evidentiary as to the true understanding or agreement between client and attorney, it is of no such conclusive or irresistible effect as contended for by appellants, and we cannot say that the court's conclusion as to whether there did exist a champertous agreement in this case can be set aside.

The trial of this action was pervaded by much of confusion, and the instructions, many of which were excepted to and assigned as error, very imperfectly presented to the jury the is-

sues upon which they were to pass by answers to the different questions. Over and over again the jury were instructed to answer questions one way or another, accordingly as they adopted the "claim of the plaintiff" or "the claim of the defendants;" thus, as counsel for the appellants argues, very obviously indicating to the jury the tendency of either answer in its ultimate effect upon the respective parties. This method of instruction is not to be approved. The jury should be held as nearly as possible to the abstract questions of fact, as has been said in so many cases, unguided by any suggestion of the interest of either party. Nevertheless, it is of course true that the ordinary jury will, in the great majority of cases, appreciate the effect of an answer, and not every intimation from the court from which they might draw inferences is to be held so prejudicial as to necessitate reversal. In the present case there could be little, if any, doubt that the jury must have understood the effect of their answers without any suggestion other than the knowledge of the issues necessarily obtained by them in the course of the trial. So that, with some hesitation, we have concluded that reversal need not necessarily result from the manner of describing the issues above mentioned; nor because in his instructions with reference to the second question the court, as appears at least by the record, reversed the parties and ascribed the plaintiff's contention to the defendants, and the defendants' to the plaintiff. Other criticisms of the instructions present no questions of law of general interest to warrant preservation of their discussion in an opinion. We shall merely mention such as we deem prejudicially erroneous.

On the second question the court instructed that if the jury answered the first question "No" they must, in his opinion, answer the second question "Yes." This was erroneous, because included in the second question was not merely the concrete issue whether plaintiff signed the deed in consideration of $50, or, as an alternative, upon the defendants' promise to pay over to her proceeds of some sale, but also the question

whether, if the latter contract were made, it included a promise to pay proceeds of personal property. After careful examination of plaintiff's testimony we are convinced that it in nowise supports this latter element; but, even if it might be considered so ambiguous as to warrant an inference that the defendants' promise did include proceeds of personal property, it by no means followed that the jury must find that it did so merely because they found that plaintiff did not accept the $50 in full payment for her signature to the deed.

The instruction with reference to the fourth question was erroneous in that it incorrectly understated the amount contended for by appellants.

The instruction with reference to the fifth question so entirely confused defendants' claim that a certain team of the agreed value of $500, in the proceeds of which plaintiff should have no interest, was included in the sale at a gross price of $2,800, that we can feel no assurance that the jury intelligently passed thereon.

As to the sixth question the amount was obviously increased some $20 by instructing the jury to find the reasonable value of certain personal property, when, under the alleged contract, defendants were to account only for the proceeds thereof on sale, the amount of which, as also the fact of sale, was established by undisputed evidence.

The most serious difficulty we have encountered in reaching a conclusion that the rights of the parties can in any wise be determined from this verdict arises from certain remarks of plaintiff's counsel in the course of his argument to the jury. The most serious are as follows: "But, gentlemen, remember that this is a poor woman, as brought out by the evidence." Upon objection being raised to this the court ruled that it was not proper, and that poverty was not proper to be considered or commented on to the jury at all. Again, counsel asserted that "$500 of the indebtedness was not honest indebtedness." There was no evidence whatever to impugn the integrity of any $500 claim which the defendants made against the prop-

erty. This was objected to and exception reserved, but no
ruling made by the court. Again, counsel industriously called
the attention of the jury to a brother of the defendants, who,
it was claimed, was a notoriously disreputable person in the
community, but who had no relation to the case whatever so
far as any evidence disclosed. This also was objected to and
exception reserved, but no ruling or criticism was made by
the court. It is difficult to account for such utterances upon
any theory save a purpose to prejudice and inflame the jury
against defendants and thus to divert them from their duty
of fair and judicial consideration of the evidence. Were
there no other error found, it might be a serious question
whether such conduct of itself must not subject the client to
the burdens of reversal and new trial; but, as other errors have
already been pointed out, we need not definitely declare a con-
clusion on that question. We may content ourselves with
emphasizing our disapproval of efforts on the part of counsel
to pervert a verdict from a judicial declaration of the facts es-
tablished by the evidence, to an expression of sympathy for
or indignation against one or other of the parties.

All of the errors thus far commented upon, except possibly
those with reference to misconduct of counsel, it will be ob-
served, could have no effect upon the verdict or judgment
save by way of enhancement of the recovery by inclusion
therein of proceeds of personal property upon the farm, and
the prejudicial effect of the remarks of counsel may well be
believed to have been measured by some excessive allowance.
*Hocks v. Sprangers,* 113 Wis. 123, 87 N. W. 1101, 89 N. W.
113. It is, of course, highly desirable that litigation should
be terminated, and, if the prejudicial effect of errors can be
obviated by diminution of the amount of the recovery, justice
and the interests of both parties will thereby be promoted.
We think it plain from an examination of plaintiff's evidence
that she nowhere testified that defendants agreed to account
for or pay to her proceeds of any personal property; that the
utmost of her contention was that they were to pay her pro-

·ceeds of sale of the real estate after deducting the mortgages thereon and a commission of $100. She also concedes that the $50 paid to her was by way of advancement upon this agreement. Neither is there substantial dispute as to the ·amount allowed by Sehring, the purchaser, for personal prop- ·erty in the gross payment of $2,800 upon the purchase from the defendants of the farm and certain personal property. We have concluded, therefore, that the finding of the jury that ·the defendants did not procure plaintiff's signature to the ·deed for the payment of $50, but for a promise to account for the surplus proceeds of the real estate, is not so shown to have been prejudicially affected by any of the errors that it must be set aside, and, assuming such basis, that substantial justice will be accomplished if all considerations of personal property be eliminated from the recovery. The defendants confessedly received $2,800. The mortgages upon the real estate at the time of said sale amounted to $1,636.16. The personal property transferred to Sehring in the sale, of which there is any definite proof either of identity or value, was a team of horses at an agreed value of $500 and other specified property aggregating $134. There may have been some other personal property which had belonged to Moses Lyttle and passed to Sehring, but we fail to find any evidence which could have supported a verdict as to what that property was, ·or as to its value. The burden of proof to establish any such deduction from the conceded $2,800 gross price was upon the defendants; hence no deduction therefor could be allowed. These two amounts, aggregating $2,270.16, left as surplus proceeds $529.84, from which defendants were entitled to de-· duct their $100 commission, the $50 paid plaintiff, and $2 for an abstract, aggregate $152, leaving $377.84 as net pro- ·ceeds of the real estate at the time of the sale, August 11, 1904; interest thereon to date of judgment would be $44.08, ·making total recovery $421.92. Certain other expenditures ·claimed to have been made by defendants in connection with

said sale, such as traveling expenses and compensation to a subagent, would clearly fall within and be compensated by their agreed commission of $100.. If it be contended that plaintiff's evidence is ambiguous as to whether the deduction from the sale price of the land was to be merely the mortgages upon the land or all indebtedness from her husband to the defendants, that must be deemed immaterial because of the fact conceded by the defendants that they agreed to apply $250, allowed Moses Lyttle as the price of his team, upon such indebtedness, which would have satisfied all of the debts other than those secured by real-estate mortgages. We are persuaded that a reduction of plaintiff's damages to the amount above stated will eliminate therefrom any prejudice which can reasonably be ascribed to the errors committed upon the trial.

*By the Court.*—Judgment modified by reducing the amount of damages as of its date to $421.92, and, as so modified, is affirmed; appellants to recover costs in this court.