KRAMER, Plaintiff and Respondent, v. STEWART, Defendant: MUTUAL INDEMNITY COMPANY, Defendant and Appellant.

*November 30, 1961—January 9, 1962.*

For the appellant there were briefs by *Wilkie, Anderson, Bylsma & Eisenberg* of Madison, and oral argument by *Horace W. Wilkie* and *Clarence G. Bylsma.*

For the respondent there was a brief by *Lloyd A. Schneider* of McFarland, and *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Mr. Fred F. Kaftan* and *Mr. Schneider.*

BROWN, J.  After protracted preliminary procedural sparring the litigation has reached a "second amended complaint." This complaint alleges that defendant Stewart is an officer, director, and general agent of defendant Mutual Indemnity Company, a Wisconsin mutual insurance company; that Stewart is empowered by a contract between him

and the corporation to manage the affairs of the corporation and does in fact manage them and has complete control of the affairs of the corporation; that in April, 1952, Stewart, acting as manager of Mutual *in his own behalf and in behalf of Mutual,* entered into a contract with plaintiff Kramer whereby Kramer was to act as a general agent of Mutual employed to procure salesmen to sell Mutual's policies and to build up a sales organization for the purpose of augmenting Mutual's business. The complaint alleges that the expense of organizing and conducting this sales organization was to be borne by Kramer and the organization was to be Kramer's property; that plaintiff was to have all commissions and all renewals and expirations on policies written by him or his sales force and he was to be paid commissions on both the new and renewal business. The contract was very like that which was before us in *Nelsen v. Farmers Mut. Automobile Ins. Co.* (1958), 4 Wis. (2d) 36, 90 N. W. (2d) 123. The complaint alleges that at first the contract set no time limit on the duration of this agreement but in 1953 Kramer and Stewart, acting in his own and in Mutual's behalf, modified the contract whereby Kramer's contract rights could be terminated and in that event Stewart and Mutual would pay to Kramer a sum amounting to 24 times the amount of renewals written in the month in which the termination occurred.

The complaint further alleges that Kramer diligently performed his obligations under the contract and greatly increased the sale of Mutual's policies, but in 1956 Stewart, acting in his own and in Mutual's behalf, terminated the contract and thereafter he and Mutual have refused to pay the termination sums specified in the contract.

Plaintiff's first cause of action demanded from the two defendants $206,400, with interest, alleged to be 24 times the

amount of the renewals on the last month's business. His second cause of action realleges the facts in the first cause but demands relief in *quantum meruit*.

The trial court concluded that there was no misjoinder by pleading alternative causes of action, one on contract and the other on *quantum meruit*. The conclusion is supported by *Badger Telephone Co. v. Wolf River Telephone Co.* (1904), 120 Wis. 169, 97 N. W. 907, and we affirm the order overruling the demurrer on this ground.

The complaint has alleged that Mutual has an agent, Stewart, whose authority includes the hiring for Mutual of subordinate agents to do the things and upon the terms which Stewart, in behalf of Mutual, offered to Kramer and such a contract was negotiated between Kramer and both Stewart and Mutual. It is then alleged that Kramer performed his contract obligations but Mutual has terminated the contract and refuses to pay the amounts which, on termination, the contract required.

We see no failure on the face of the complaint to state a cause of action.

Appellant seeks to avoid this rather-obvious conclusion by urging conclusions which, to us at least, are not so obvious. The first is that plaintiff is estopped by the record from alleging that Stewart was a general agent of Mutual authorized to make the disputed contract for Mutual. The estoppel is supposed to arise because in his earlier complaints in the action plaintiff did not allege that Stewart had power to bind Mutual or that he purported to do so but only demanded that Mutual recognize a judgment against Stewart; also in argument on one of the many preceding demurrers, Kramer's counsel is said to have admitted that Stewart was not acting as Mutual's agent but was only acting for himself in contracting with Kramer.

Mutual's present demurrer is to the second amended complaint. It does not reach back to the allegations of the original or the first amended complaints. Indeed, when, as in this action, a demurrer to an early complaint is sustained and permission to plead over is granted, the court expects the amended complaint will contain allegations of facts not present originally. The inconsistency, if any, between successive complaints may plague the pleader at some subsequent stage of the action but it does not make a later complaint vulnerable to demurrer, nor is a plaintiff estopped in drafting a new complaint merely because the new one is inconsistent with positions taken earlier.

Appellant informs us that it relies principally on a contention that the alleged contract is between Kramer and Stewart as an individual and is void in its purport to affect Mutual and Kramer because the right to future premium income of a mutual insurance company belongs to the policyholders and cannot be the subject of a contract between private individuals. The contention rests on an assumption that in making the contract Stewart was a private individual representing only himself and could not dispose of Mutual's assets in a deal between him personally and Kramer. This ignores the complaint's allegations that in making the contract Stewart acted for and in behalf of Mutual and was authorized to do so and the contract was that of Mutual as well as that of Stewart individually.

Appellant also contends that to bind Mutual to such a contract the approval of Mutual's directors and policyholders is required but was not given. The complaint alleges that Stewart was empowered by Mutual to make contracts such as the one before us. It does not appear on the face of the complaint that he had no such authority. Mutual's challenge to Stewart's power is a matter of proof to be raised by an answer, not a demurrer.

We concur in the trial court's conclusion that the second amended complaint states a cause of action. Appellant's demurrer to it was correctly overruled.

Kramer has moved for review of the trial court's order denying his motion to strike Mutual's demurrer to the second amended complaint and to review his motion that plaintiff have judgment against Mutual by default.

After plaintiff served his second amended complaint on Mutual, Mutual asked an order of the trial court requiring plaintiff to furnish a bill of particulars to enable Mutual to answer and meanwhile to extend Mutual's time to answer the complaint. The order was granted for those purposes. Kramer furnished the bill of particulars. Then Mutual requested and obtained an adverse examination of Kramer to enable Mutual to answer the complaint and a further extension of time for answering.

All these demands by Mutual were made for the stated purpose of enabling Mutual to answer the second amended complaint. In its petitions for these reliefs it described itself as "this answering defendant." The orders granting the reliefs were given for that purpose but having obtained these benefits Mutual did not answer but instead demurred. Thereupon Kramer has moved the trial court to strike the demurrers as sham and frivolous and, no answer having been interposed, that the trial court enter default judgment for plaintiff on his complaint.

In this phase of the case it is evident that Mutual is not such a stickler for consistency as it was when discussing plaintiff's several complaints. However, the learned trial court denied plaintiff's motions, stating:

"Counsel for plaintiff calls the court's attention to the fact that the record discloses that numerous extensions were granted to the defendant Mutual Indemnity Company for the purpose of answering. The record seems to bear out

this contention. However, after giving this matter most-serious consideration the court is not persuaded that the defendants' demurrer is sham or frivolous. The consequences of such a finding are drastic.

"In 7 Wis. 173, syllabus 2 reads as follows:

" 'A frivolous demurrer is one so manifestly bad that its character is apparent upon a bare inspection of the pleadings; one which indicates bad faith in the demurrant, and subjects him to irretrievable default, as for want of an answer.'

"Counsel for the plaintiff asks the court to render judgment for the plaintiff by default in the sum of $209,400.

"The record does not justify the court in finding that the defendants' demurrer is either sham or frivolous. Counsel for the defendants presented careful briefs in support of their contentions. A reading of their briefs indicates to the court that counsel for the defense are determined to exhaust every legitimate avenue of escape in the defense of their clients' cause. The court, however, is not persuaded that counsel is deliberately interposing obstacles for the sole purpose of delaying the trial of this case."

If the trial court had determined that Mutual's maneuvers were for the purpose of delay it would be hard for us to criticize such a conclusion. But the court did not do so and we do not find that it erred. Accordingly, on respondent's request for review those orders are affirmed.

*By the Court.*—Order overruling demurrers affirmed.

GORDON, J., took no part.