BANDEROB, Respondent, vs. WISCONSIN CENTRAL RAILWAY COMPANY, Appellant.

*September 28—November 5, 1907.*

*Railroads: Depot grounds: Duty to friends of passenger: Court and jury: Negligence: Personal injuries: Contributory negligence: Special verdict: Exception to submission of questions: Indefiniteness: Sufficiency: Materiality: Instructions to jury: "General instructions:" Requested instructions: Appeal and error: Prejudicial error: Evidence: Admissibility: Competency: Harmless error: Trial: Reception of evidence: Correction of testimony: Excessive damages.*

1. A person coming upon the platform or depot grounds of a railroad company for the purpose of taking leave of a friend who is a passenger, or in good faith about to become a passenger,

on its train, sustains toward the company the legal relation of a person upon its grounds by its invitation, to whom the company owes the duty of ordinary care.

2. The extent of such duty is to keep in a safe condition all portions of its platforms and approaches thereto, to which the public do or would naturally resort, as well as all portions of their station grounds reasonably near to the platforms, where passengers, or those who have purchased tickets with a view to take passage on its cars, as well as their friends, would naturally or ordinarily be likely to go.

3. Where plaintiff, accompanying a friend who was about to take passage on defendant's train, in passing from the street to the depot stepped off the edge of the platform, crossed a grass plot on the depot grounds in going from one portion of the platform to another, and tripped over a wire there maintained by the defendant, it cannot be said as matter of law that such act was a trespass which relieved the defendant from all duty towards the plaintiff.

4. In such case the questions whether the place of injury was reasonably near the defendant's platforms, and whether one would naturally or ordinarily be likely to go in such place, are in most cases questions of fact for the jury.

5. In an action against a railroad company for injuries sustained by plaintiff while walking on a grass plot adjacent to its depot platform, in being tripped by wires maintained by it and stretched on the line between the grass plot and its platform, the evidence, stated in the opinion, is *held* to support a verdict that defendant was negligent in maintaining such wires where and in the manner it did, and that plaintiff was not guilty of contributory negligence.

6. Exception to the submission of a question of a special verdict calling for an answer as to whether plaintiff was injured upon defendant's "depot grounds," for the reasons that such question calls for a conclusion of law instead of facts, as being indefinite and uncertain, and as not covering the issues raised by the pleadings and testimony relative to plaintiff's injuries, is too general to raise the question whether or not the words "depot grounds" were the most appropriate to be used in the question.

7. In submitting a special verdict one question was: "Did the plaintiff sustain the injuries complained of upon defendant's depot grounds by reason of being tripped by wires located and maintained by the defendant between the depot platform and the lawn to the north at the time and place alleged in the com-

plaint?" and in reference thereto the court instructed the jury: "Observe that question simply calls upon you to answer whether or not this woman was injured at the time and place alleged. If you believe her testimony you will answer 'Yes.'" The plaintiff's testimony as to the manner of the injury was not contradicted. *Held*, that the designation of the place of injury as "depot grounds" was only matter of identification or description generally of the place where the injury occurred and not a finding that the lawn was part of the depot grounds.

8. In a sentence of instructions to the jury: "The plaintiff testifies that she went to the depot at that time for the purpose of seeing a friend off. . . . Now, if you believe that testimony, then the court instructs you as a matter of law that she was lawfully there," given in reference to a question using the words "railroad premises," the words "lawfully there" are *held* not to refer to a grass plot adjacent to the depot platform where plaintiff was injured, but that plaintiff was lawfully at the depot for the purpose of seeing her friend off on a train.

9. In an action against a railroad company for injury caused by tripping over wires maintained between its platform and a grass plot adjacent thereto, questions of a special verdict inquiring whether the wires were in such condition as to be dangerous to persons having occasion to use the platform at night; whether such condition had existed for such a length of time that the defendant in the exercise of ordinary care and prudence ought to have known of and remedied such condition; whether defendant was guilty of want of ordinary care and prudence in locating and maintaining the wires in the position they were in at the time the plaintiff was injured; and whether the defendant was guilty of a want of ordinary care and prudence in not maintaining sufficient light in the place where such wires were strung, are material as bearing upon the negligence of defendant.

10. It may be negligence to leave wires stretched across a dimly-lighted place, where persons lawfully using a railroad company's platform might ordinarily or naturally be expected to go, where there would be no such negligence, or at least no such manifest negligence, in maintaining these wires in a well-lighted place.

11. In an action for personal injuries, instructions following a definition of proximate cause, stated in the opinion, are *held* not open to the criticism that thereby the court informed the jury that the defendant was guilty of want of ordinary care.

12. It is prejudicial error for the trial court by instruction to inform the jury expressly or by necessary implication of the effect of an answer or answers to a question or questions of the special

verdict upon the ultimate right of either party litigant to re-
cover or upon the ultimate liability of either party litigant.

13. By the term "general instructions" is meant such instructions as
are appropriate only to a general verdict, and which also in-
form the jury of the effect of their answers upon the final result.

14. The giving to the jury of general rules of law appropriate to the
particular question of the special verdict in connection with
which such rules are given is not error.

15. A charge otherwise proper is not erroneous merely because an in-
telligent juror might be able to infer therefrom the effect upon
the final result of his answers to the special questions.

16. All parts of the charge bearing upon a particular question of the
special verdict, whether given by the court of its own motion or
at the request of either party, should be given together in con-
nection with the submission of that question to the jury, and
the failure so to do will be considered error when it appears to
the appellate court that the jury were misled thereby, but not
otherwise.

17. Requested instructions to the jury, stated in the opinion, are *held*
appropriate, respectively, to questions of the special verdict sub-
mitted, and not such as informed the jury of the effect of their
answers upon the final result.

18. Failure to give portions of requested instructions, stated in the
opinion, in connection with the remainder of the charge relat-
ing to special questions, or to designate expressly such questions
therein, while irregular, is *held* not such a departure from cor-
rect practice as to mislead the jury.

19. While it would have been proper to refuse several requested in-
structions, stated in the opinion, because they did not expressly
designate the particular question of the special verdict to which
they were directed, yet having been given, and each being appro-
priate to a particular question of the special verdict, in the ab-
sence of objection taken at the time, no sufficient ground for re-
versal is shown.

20. In an action against a railroad company for injuries sustained by
plaintiff while walking on a grass plot adjacent to its depot plat-
form, in being tripped by wires maintained by it and stretched
on the line between the grass plot and its platform, the use of
the words "depot grounds" in a question addressed to a witness
to identify the place of the injury is not prejudicial error.

21. In such case evidence on the part of the plaintiff that there were
at times four trucks on the platform, although there was at the
time of plaintiff's injury but one, is *held* competent as bearing
upon the negligence of the defendant.

22. In such case permitting a witness to testify that the wires were probably down more times than they were up, if error at all, was harmless.

23. A party having permitted a question and answer without objection cannot properly object to the correction of the answer.

24. The evidence as to the injuries of an unmarried woman, aged twenty-five years, tended to show that her right arm was so seriously disabled as to make it impossible for her to dress without assistance and to disable her from work of any kind, and there seemed to be anchylosis of the elbow joint, the attending physician testifying that in his opinion that condition would continue and the disability remain permanent. *Held*, that it could not be said under such circumstances that a verdict of $4,750 was the result of passion, prejudice, or ignorance.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

The appeal is from a judgment rendered upon special verdict for $4,750 damages in an action to recover damages for a personal injury alleged to have been caused by the negligence of the defendant. The special verdict found: (1) The plaintiff sustained the injuries complained of upon defendant's depot grounds by reason of being tripped by wires located and maintained by the defendant between the depot platform and the lawn to the north at the time and place alleged in the complaint. (2) The plaintiff was lawfully upon said depot premises at the time of the injury. (3) The wires were in such condition as to be dangerous to persons having occasion to use said platform at night. (4) Said condition had existed for such a length of time that the defendant in the exercise of ordinary care and prudence ought to have known of the same and remedied the same. (5) The defendant was guilty of want of ordinary care and prudence in locating and maintaining said wires in the position they were in at the time the plaintiff was injured. (6) The defendant was guilty of a want of ordinary care and prudence in not maintaining sufficient light in the place where said wires were strung. (7) The facts above found in (3), (5),

and (6) were the proximate cause of plaintiff's injury. (8) No want of ordinary care and prudence on the part of plaintiff contributed to produce the injury. (9) Four thousand, seven hundred and fifty dollars will reasonably compensate the plaintiff for the injuries she sustained.

The detail or evidential facts are few and simple. The defendant has at Oshkosh, Wisconsin, between Algoma street on the south and Church street on the north, its passenger station and grounds adjoining, extending parallel with the tracks. Somewhat south of the middle of these grounds is the passenger depot building, a little farther north the express office and building, next north of this is a cinder walk extending east from the east side of the brick platform, next north of this a grass plat extending to Church street. Extending from Algoma street to Church street, between the railroad tracks and the passenger depot, express building, cinder walk, and grass plat, is a brick platform used by passengers in coming to and leaving trains. Beginning at Church street this brick platform is twelve feet wide down to the point where the north boundary of the cinder walk extended westerly would intersect the same. At this point of intersection there is a telegraph pole. Thence southerly the platform is widened out to extend eastwardly, making it twenty feet in width to the cinder walk and to the express building, and after continuing south past the express building is widened to twenty-four feet, and continues at this width for a distance of about seventy-five feet, when it is widened so as to take in and surround the passenger depot, and thereafter, continuing southerly, extends to Algoma street at a width of about twelve feet. The following is defendant's Exhibit 2, and shows part of the grass plat, the platform, the eastward expansion of the platform, the telegraph pole, and the wires crossing to the left from the telegraph pole. The view is looking south from a point fifty-six feet north of the telegraph pole.

There was no fence on the west side of the grass plat and between that and the brick platform and they are on substantially the same level. Running along the north boundary of the cinder walk and over to the telegraph pole was a wire fence consisting of two wires, and at the time in question and for some time prior to that time the top wire was broken down and the bottom wire was several inches from the ground, and the wire extended from the telegraph pole eastwardly to the nearest fence post. The nearest light to this wire fence and telegraph pole was at the passenger depot, fifty-nine feet distant, and was a sixteen candle-power incandescent electric light. There was some evidence of use of this part of the grass plat by persons crossing between the telegraph pole and the cinder walk. On the night in question the plaintiff with two friends started for the depot in question for the purpose of seeing a friend off on the train. It was a dark night. They came down Church street, entered upon and turned south on the brick platform, were moving rapidly south toward the passenger depot, and coming near the telegraph pole they found a baggage truck on the platform quite close to and west of the telegraph pole and also moving south. One of the girls passed south upon the platform on the west side of the truck and between the truck and the train, which was then standing on the track headed north. The plaintiff undertook to pass around the track on the east of the telegraph pole, stepped onto the grass plat about twenty feet from the telegraph pole, and continued on the grass plat toward the passenger depot until she came to the wire in question, when she tripped on this wire and fell onto the brick platform south of the wire and in so doing sustained the injuries complained of.

For the appellant there was a brief by *Thomas H. Gill* and *Walter D. Corrigan,* and oral argument by *Mr. Corrigan.* They contended, *inter alia,* that to constitute actionable negligence the defendant must be guilty of some wrong-

ful act or breach of positive duty to the plaintiff. *Dowd v. C., M. & St. P. R. Co.* 84 Wis. 105; *Walters v. C. & N. W. R. Co.* 113 Wis. 367, 374; *Peake v. Buell,* 90 Wis. 508, 515; *Norfolk & W. R. Co. v. Wood,* 99 Va. 156, 37 S. E. 846, 847. The railway company owed no duty to the plaintiff while she was trespassing upon portions of its property which had been specially reserved by it from public use. The railway company was not bound to fence its premises about a station to prevent passengers from taking a short cut across them at night for the purpose of reaching the train sooner than by the customary way, or for any other purpose unless it be absolutely necessary. *Burgess v. G. W. R. Co.* 6 C. B. n. s. 923; *Davis v. Houston, E. & W. T. R. Co.* 29 Tex. Civ. App. 42, 68 S. W. 733; *Holcombe v. Southern R. Co.* 66 S. C. 6, 44 S. E. 68; *Abbott v. D., L. & W. R. Co.* 65 N. J. Law, 310, 47 Atl. 588; *Emery v. C., M. & St. P. R. Co.* 77 Minn. 465, 80 N. W. 627; *Manning v. C. & O. R. Co.* 16 L. R. A. 271, 274; *Sweeny v. O. C. & N. R. Co.* 10 Allen, 368, 87 Am. Dec. 644; *De Blois v. G. N. R. Co.* 71 Minn. 45, 73 N. W. 637; *Akers v. C., St. P., M. & O. R. Co.* 58 Minn. 540, 60 N. W. 669; *Klugherz v. C., M. & St. P. R. Co.* 90 Minn. 17, 95 N. W. 586; *Keefe v. B. & A. R. Co.* 142 Mass. 251, 7 N. E. 874; *McKone v. Mich. Cent. R. Co.* 51 Mich. 601, 17 N. W. 74; *Redigan v. B. & M. R. Co.* (Mass.) 28 N. E. 1133; *Falls v. S. F. & N. P. R. Co.* 97 Cal. 114, 31 Pac. 901; *Pa. Co. v. Marion,* 104 Ind. 239, 243, 3 N. E. 874; *Kelly v. Manhattan R. Co.* 112 N. Y. 443, 20 N. E. 383; *Fremont, E. & M. V. R. Co. v. Hagblad,* 72 Neb. 773, 790, 101 N. W. 1033; *Moreland v. B. & P. R. Corp.* 141 Mass. 31, 6 N. E. 225. The defendant had a right to arrange its station and set aside a suitable place or places for the use of its passengers, and it was the duty of the plaintiff, if she claimed the rights of a passenger on the defendant's premises, to keep the place which was provided for the use of passengers going to and coming from the trains. *Mich. Cent.*

*R. Co. v. Coleman,* 28 Mich. 440; *Little Rock & Ft. S. R. Co. v. Cavenesse,* 48 Ark. 106, 2 S. W. 505; *Graham v. Pa. R. Co.* 39 Fed. 596; *Sturgis v. D., G. H. & M. R. Co.* 72 Mich. 619, 40 N. W. 914; *Zoebisch v. Tarbell,* 10 Allen, 385; *Drake v. Pa. R. Co.* 137 Pa. St. 352, 20 Atl. 994; *Bancroft v. B. & W. R. Corp.* 97 Mass. 278; *Eckerd v. C. & N. W. R. Co.* 70 Iowa, 353, 30 N. W. 615; *Gunderman v. M., K. & T. R. Co.* 58 Mo. App. 370; *Gonzales v. N. Y. & H. R. Co.* 50 How. Pr. 126; *Houston, E. & W. T. R. Co. v. Grubbs* (Tex. Civ. App.) 67 S. W. 519, 522; *Hathaway v. N. Y., N. H. & H. R. Co.* 182 N. Y. 286, 65 N. E. 387.

*W. C. Cowling,* attorney, and *John F. Kluwin,* of counsel, for the respondent.

TIMLIN, J.   Although there is little conflict of fact in this case, the questions of law are very close.   The principal contention of the appellant is that the plaintiff was a trespasser upon the grounds of the defendant at the time she received the injury by tripping against and falling over the wire stretched by defendant from the telegraph pole eastwardly at right angles to the length of the brick platform where the twelve-foot width of the latter terminated and between the grass plat and the north edge of the eight-foot eastward extension or expansion of the brick platform.   That in consequence the defendant owed the plaintiff no duty except the duty not to inflict upon her wilful injury, and in further consequence the plaintiff was guilty of contributory negligence as matter of law.   In the first place and before setting foot on the grass plat, the plaintiff and her companions, coming upon the platform or depot grounds for the purpose of there taking leave of a friend who was a passenger, or in good faith about to become a passenger, on defendant's train, sustained toward the defendant the legal relation of a person upon its grounds by its invitation, to whom

the defendant owed the duty of ordinary care. *Dowd v. C., M. & St. P. R. Co.* 84 Wis. 105, 54 N. W. 24, and cases cited in opinion; *Klugherz v. C., M. & St. P. R. Co.* 90 Minn. 17, 95 N. W. 586; *McKone v. Mich. Cent. R. Co.* 51 Mich. 610, 17 N. W. 74; 3 Thomp. Comm. on Neg. §§ 2678–2685. Aside from the degree of care, the extent of the duty which defendant owed such person is that stated in *Patten v. C. & N. W. R. Co.* 32 Wis. 524, 533, to be well settled as follows:

"To keep in a safe condition all portions of their platforms and approaches thereto, to which the public do or would naturally resort, as well as all portions of their station grounds reasonably near to the platforms, where passengers, or those who have purchased tickets with a view to take passage on their cars, would naturally or ordinarily be likely to go."

In *Montgomery & E. R. Co. v. Thompson,* 77 Ala. 448, it is said that this duty is owing to the friends of the traveler who come to take leave of him at the depot, and it seems to have been first formulated by Judge DILLON in *McDonald v. C. & N. W. R. Co.* 26 Iowa, 124. See, also, *Cincinnati, H. & D. R. Co. v. Aller,* 21 Am. & Eng. R. R. Cas. N. s. 304, and cases in note on pages 312, 313; *Stewart v. Int. & G. N. R. Co.* 2 Am. & Eng. R. R. Cas. 497. In 3 Thomp. Comm. on Neg. § 2682, it is said that this duty extends to all portions of the ground of the carrier which passengers will naturally and ordinarily use, in the absence of being warned not to do so, in approaching the carrier's station, in waiting for the arrival of its vehicle of transportation, and in getting off or on the same. The rule governing such case seems to be cognate to the rule respecting the liability of towns for obstructions in the highway outside of the traveled track. *Wheeler v. Westport,* 30 Wis. 392, and cases cited in opinion. But enough has been said to show that this rule is firmly intrenched in our jurisprudence, and we have no desire to limit or modify it.

Next, it must be apparent that to hold that stepping off
the edge of the platform and onto the grass plat at such sta-
tion was a trespass which as matter of law relieved the de-
fendant from all duty toward the plaintiff would be incon-
sistent with the rule above quoted. If the defendant is by
virtue of this rule obliged to use ordinary care to keep in a
safe condition those portions of its station grounds reasonably
near to its platform where passengers or persons in the rela-
tion of plaintiff in this case would naturally or ordinarily be
likely to go, it cannot be consistently said that at the same
time it owes no duty, except the duty not to inflict wilful
injury, to the person who does get off the platform upon
grounds reasonably near to the platform, where one in the
position of such person would naturally or ordinarily be
likely to go. Again, reasonable nearness to the depot plat-
form, and whether one would naturally or ordinarily be
likely to go in such place, must in most cases be questions of
fact for the jury. The rule relied upon by appellant, while
abstractly sound and often applicable, is not a rule of uni-
versal or general application. *Meibus v. Dodge,* 38 Wis.
300; *Johnson v. C. & N. W. R. Co.* 56 Wis. 274; 1 Shearm.
& Redf. Neg. (5th ed.) §§ 97, 98, and cases. The plaintiff,
under the foregoing circumstances and sustaining these legal
relations to the defendant, while proceeding southward on
the defendant's platform with her companions, overtook the
baggage truck on the platform moving in the same direction
and attempted to pass it. There was room to pass the truck
between the truck and the train, and it was a question of
fact whether or not the plaintiff was in the exercise of or-
dinary care in making the attempt to pass this truck. This
question was submitted to the jury and found against the
defendant. There was for consideration by the jury the
question whether an ordinarily careful person would attempt
to pass the truck at all, or, having so attempted, would pass
on the west side of the moving truck, nine feet long exclu-

sive of the handle or tongue, and three feet three inches wide, which might at any time have swung toward the train while the plaintiff was passing between the train and the truck, or whether such person would naturally or ordinarily under such circumstances be likely to pass said truck on the east side of the truck by stepping on the grass plat, and would naturally and ordinarily continue toward the eight-foot eastward expansion of the platform, rather than attempt to return to the platform between the southward moving truck and the telegraph pole. It was also a question, considering the distance of the truck from the telegraph pole at the time the plaintiff attempted to pass on the east of the truck, and the speed of the truck and its position on the platform, whether the truck could have been passed on the east side in any other way than by proceeding southward on the grass and regaining the brick platform east of the telegraph pole. All these considerations were bound up in the investigation and determination of the question whether or not the place where the plaintiff went in order to pass the truck on the east was such a place as an ordinarily prudent person, sustaining the legal relations which plaintiff did sustain to the defendant, would naturally and ordinarily be likely to go under such circumstances. There was, therefore, evidence within the rule of law aforesaid to support the verdict of the jury that the defendant was negligent in maintaining these wires at a place insufficiently lighted for the purpose of discovering the wires, in such close proximity to its platform, and that the plaintiff was not guilty of contributory negligence in passing on the grass plat to the eastward of the truck and continuing thereon in an effort to reach the eastward extension of the platform at a point east of the telegraph pole mentioned. To hold otherwise in the case at bar would be to emasculate the rule of *Patten v. C. & N. W. R. Co.* 32 Wis. 524, and render that rule a mere idle declaration, without efficacy in all cases in which the negligent condition, al-

though close to the edge of the passenger platform, could only be reached by knowingly stepping over the edge of such platform without knowledge of the dangerous condition.

The first question of the special verdict read as follows:

"Did the plaintiff sustain the injuries complained of upon defendant's depot grounds by reason of being tripped by wires located and maintained by the defendant between the depot platform and the lawn to the north at the time and place alleged in the complaint?"

The defendant excepted to the submission of this question for the reason that the same called for a conclusion of law instead of for facts, and for the further reason that the same is indefinite and uncertain and did not cover the issues raised by the pleadings and testimony relative to the plaintiff's injuries. The appellant now claims that the form of this question compelled the jury, under the instructions of the court, to find that plaintiff was injured on defendant's depot grounds, when the undisputed evidence was that she was not on the depot grounds but on a park adjacent thereto. It submits several judicial definitions of the words "depot grounds." We consider the exception too general to raise the question whether or not the words "depot grounds" were the most appropriate to be used in this question. In a sense she was injured upon defendant's depot grounds. The form of this question was sufficient under the circumstances and in no way tended to mislead the jury.

The appellant assigns error generally in the instructions to the jury, and presents the following excerpts from the instructions and the following points in the detail of argument in support of such assignment:

With reference to the first question: "Observe that question simply calls upon you to answer whether or not this woman was injured at the time and place alleged. If you believe her testimony you will answer 'Yes.'" The testimony of the plaintiff with reference to falling over the wires

and thereby receiving injury was not contradicted, but the appellant contends that, because the question described the place as depot grounds, the jury were thus compelled to find that the injury took place on the depot grounds, and that the court held as matter of law that the grass plat was part of the depot grounds. But this was not the object or import of the question, nor was the defendant in any way concluded upon this question by the answer. If the defendant were so concluded, all that part of the charge respecting the duty of the defendant to keep in reasonably safe condition not only its depot grounds, but all portions of its station grounds reasonably near to the platform where persons in the relation of plaintiff to defendant would naturally or ordinarily be likely to go, and all parts of the charge in relation to the contributory negligence of the plaintiff in stepping off the platform and onto the grass plat, would be surplusage. There would be no trial of this latter question necessary if the consequences of an affirmative answer to the first question were such as claimed by appellant. The whole charge must be construed together, and, so construed, the designation of the place in question as depot grounds is only matter of identification or description generally of the place where the injury occurred and not a finding that the grass plat was part of the depot grounds.

The next exception is to the words "lawfully there" in the following sentence: "The plaintiff testifies that she went to the depot at that time for the purpose of seeing a friend off. . . . Now, if you believe that testimony, then the court instructs you as a matter of law that she was lawfully there," etc. This was said with reference to the second question of the special verdict, and we think it cannot reasonably be interpreted to mean that the plaintiff was lawfully on the grass plat, but means that she was lawfully at the depot for the purpose of seeing her friend off on the train. The second question, as shown by the use of the words "depot premises"

and by the charge of the court with reference thereto, refers to plaintiff's presence at the depot and not to her incursion upon the grass plat.

. The instructions relating to the third question of the special verdict are excepted to, and it is argued that "it is of no concern in this case whether or not the wires were dangerous to persons using the platform." We disagree with this. It was of concern with reference to the rule of law laid down in *Patten v. C. & N. W. R. Co.* 32 Wis. 524, 537, and also with reference to the alleged negligence of defendant; and the same may be said of the instructions excepted to and given respecting the fourth and fifth questions of the special verdict.

The sixth question presented an inquiry into the negligence of the defendant in not maintaining a sufficient light at the place where the wires were strung, and the jury were instructed with reference to this question. These instructions are criticised as follows: "What difference does it make whether it was light or not for the purposes of this case? There was light enough to see the truck. . . . That there was insufficient light somewhere else is not material." We consider this fact material as bearing upon the negligence of the defendant. It may be negligence to leave wires stretched across a dimly-lighted place, where persons lawfully using the platform might ordinarily or naturally be expected to go, when there would be no such negligence, or at least no such manifest negligence, in maintaining these wires in a well-lighted place.

The seventh question related to the proximate cause of plaintiff's injuries, and after defining "proximate cause" the court said:

"Now it is claimed on the part of the plaintiff that this want of ordinary care on the part of the defendant company in maintaining those wires in the condition where they were and in not having sufficient light was the proximate cause of

this injury. On the other hand, on the part of the defendant that is denied, and it is contended on the part of the defendant that the proximate cause of the injury was the plaintiff's own negligence."

It is claimed that the court thereby informed the jury that the defendant was guilty of want of ordinary care. If this is true, then he must also have informed the jury that the plaintiff was guilty of negligence, for the same form of sentence is used in each case. But no jury, we think, would so understand either sentence, and that is not the true meaning of either sentence. The rules laid down in former decisions of this court respecting the effect of this form of stating to the jury what each party claims, where there is a special verdict, will be referred to later in this opinion.

It is next argued that "such of the general instructions as are covered by defendant's exceptions 14 to 26, inclusive, inform the jury as to the effect of their verdict. The presumption obtains that jurors are intelligent. Whoever heard of or saw a juror who could not understand the legal effect of his answers under such instructions?" The instructions so criticised are as follows, and were given upon request, presumably of the plaintiff, after the judge had taken up and instructed upon each separate question of the verdict, and without other specification of the particular question or questions to which such instructions were appropriate than appears therefrom:

Paragraph 1. "It is the law of this state that, where an intending passenger is about to take a train in the course of the regular passenger traffic of the railway company, there is an implied invitation on the part of the company for such passenger to come upon and use its depot platform for such purpose. And such implied invitation extends also to the friends and relatives of such passenger who may desire or who may have occasion to accompany him, and any friend or relative so going upon the depot platform of the railway company to attend upon the arrival or departure of passenger trains for

the purpose of speeding departing or welcoming arriving
passengers is, by reason of such implied invitation on the
part of the railway company, rightfully and lawfully there."
Paragraph 2. "The defendant company was obliged to keep
in a reasonably safe condition all portions of its depot plat-
forms and the approaches thereto, to which the public do or
would naturally resort for the purpose of taking or leaving
trains, and as well all portions of their station grounds rea-
sonably near to the platforms where departing or arriving
passengers, going to or from defendant's trains, would nat-
urally or ordinarily be likely to go; and such duty attended
to this plaintiff at the time of the accident, if you find from
the evidence, as plaintiff claims the fact to be, the plaintiff
was at said station for the purpose of seeing a friend aboard
the train. It is the duty of railroad companies, who in the
ordinary course of their legal passenger business take and
discharge passengers from their trains after dark at night,
to see to it that the station and platform are properly
lighted." Paragraph 3. "Negligence is the proximate cause
of an injury only when such injury is the natural and prob-
able result of it and in the light of attending circumstances
ought to have been foreseen by a person of ordinary intelli-
gence and prudence." Paragraph 4. "Plaintiff was bound
to exercise ordinary care and prudence while on said depot
platform to avoid injury to herself; that is, she was bound
to exercise such a degree of care and prudence as ordinarily
careful and prudent persons or as the great mass of man-
kind—that is, the majority of persons—would exercise under
the same or similar circumstances. She cannot be held guilty
of contributory negligence—that is, a want of ordinary care
and prudence—as a matter of law simply because she came
in contact with the wires. In determining that question
you have a right to take into consideration that this acci-
dent occurred at night and at a place where it was claimed
it was dark, the location and situation of said wires, their
relative positions with reference to the platform, the method
in which platform was lighted, the sufficiency or insuffi-
ciency of light as you may find the fact to be from the evi-
dence in the case, the movements of the truck, and all the
surrounding circumstances; and if you find from the evi-
dence, and all the surrounding circumstances as shown by

the evidence, that the plaintiff used ordinary care and prudence, then you must answer question No. 8 'No.' A railroad company is bound to keep its platform and walk around and leading to and from its station, and used by persons having lawful occasion to go there, reasonably safe and convenient for such use and free from obstruction, and persons lawfully there have a right to assume that such duty has been fulfilled and that the platform and way is reasonably safe, unless they have knowledge to the contrary. If you should find from the evidence in the case, and all the surrounding circumstances as shown by the evidence, that the plaintiff at the time she stepped to the side upon the lawn to avoid the truck, and in so doing she came in contact with the wires which tripped and injured her, and that she at that time was exercising ordinary care and prudence herself, and that it was because of no light or insufficient light that she walked into said wires, and that the same were not seen by her, and that at said time and place she conducted herself in an ordinarily careful and prudent manner and as ordinarily careful and prudent persons would have done if placed in the same position as was plaintiff, then it cannot be said that want of ordinary care and prudence on her part contributed to produce the injury; and if such be the facts, and you so find them to be from the testimony in this case, then you should answer this question No. 8 'No.' "

The objection that a charge given in connection with a special verdict is a general charge, and the objection that the charge informed the jury of the effect of their answers to the questions of the special verdict, are so frequently urged upon this court that it seems advisable to here examine the precedents and ascertain what rules have been established in this regard, as well as to consider the more extreme view, also suggested by counsel in the instant case, to the effect that any intelligent juror could not fail to ascertain from the instructions given the effect of his answers, and that for this reason the instructions were erroneous. The earliest case (*Ryan v. Rockford Ins. Co.* 77 Wis. 611, 46 N. W. 885) presented the question where there was a general verdict submitted in

connection with a special question, and the court charged with reference to the special question: "If you answer that question 'Yes' it would be in accordance and consistent with a general verdict for the plaintiff. If you answer it 'No' it would be inconsistent with a general verdict for the plaintiff." With reference to a second question submitted at request of defendant's counsel the court gave substantially the same instructions. These instructions were held to be erroneous. The question of what constitutes a general charge, how general the charge must be in order to constitute error, or how far the result of their answers to the special questions must be concealed from the jury, was not involved in this case. It was a plain and substantially direct instruction regarding the effect of a negative or an affirmative answer upon the success of one of the parties litigant. In *Chopin v. Badger P. Co.* 83 Wis. 192, 53 N. W. 452, the rule of *Ryan v. Rockford Ins. Co., supra,* was invoked by appellant against a charge relative to a special verdict which informed the jury that if they answered the third question "No" they need go no further, and if they answered the fifth question "No" they need go no further, and they need not answer the last question. The third question asked whether the plaintiff was of sufficient age and experience to comprehend the dangers, etc. The fifth question asked whether the plaintiff was at the time of the accident using ordinary care and attention in the performance of his work, and the last question asked for the amount of plaintiff's damages. It was held there was no error. The court said among other things:

"There are probably few cases tried in which rulings are not made during the course of the trial which clearly indicate to the jury the effect on the result of the answer to some question or questions, but no one would contend that the verdict was thereby vitiated."

The rule of this case apparently is that it is not ground for reversal that an intelligent juror might, if he were so dis-

posed, ascertain from the judge's charge by inference the effect upon the case of his answer to one or more of the questions of the special verdict. Certainly the juror must know that, if a negative answer to question 3 or 5 made it unnecessary to consider the question of damages, this must be because, on account of such answers, the plaintiff was entitled to no damages.

*Reed v. Madison,* 85 Wis. 667, 56 N. W. 182, was a case where there was a special verdict unaccompanied by any general finding, and yet the court charged the jury on the law of the case as though they were to return a general verdict.

"That is to say, the jury were told that in order to entitle the plaintiff to judgment they must find that she was injured by reason of the insufficiency of the sidewalk, that she was a traveler thereon, that the city officers had constructive notice of the defect in the sidewalk and should have repaired it before the accident, and that the plaintiff was not guilty of any want of ordinary care which contributed directly to the injury."

Looking at the questions of the special verdict reported in this opinion, it is obvious that some essential questions are covered by the words of the charge and the jury expressly told as indicated. It is also noticeable that this form of charge is what is understood as the general statement of the law of the case. This charge was held not erroneous. We cite this case here in chronological order as presenting one phase of what are sometimes called general instructions which do inform the jurors of the effect of their answers to the questions of the special verdict.

*Coats v. Stanton,* 90 Wis. 130, 62 N. W. 619, was a case where there was a general verdict accompanied by two special questions, one of which was as follows: "Was the plaintiff or her brother, who was driving at the time, guilty of any want of ordinary care which contributed to the plaintiff's injury?" After the jury in response to the general verdict had found "for the plaintiff and assessed her damages at $250" and

270    SUPREME COURT OF WISCONSIN.    [Nov.

Banderob v. Wis. Cent. R. Co. 133 Wis. 249.

answered the question above quoted to the effect that there was some want of ordinary care, the court told the jury that if they answered "Yes" to this question the general verdict of $250 could not stand, and the jury retired and after some further proceedings answered the question in the negative. This instruction by the court was held erroneous, and the case belongs in that class of cases where the court expressly informed the jury of the effect upon the final judgment of their answers to the special questions. *Conway v. Mitchell,* 97 Wis. 290, 72 N. W. 752, is also clearly in this latter class.

In *Kohler v. West Side R. Co.* 99 Wis. 33, 74 N. W. 568, there was a special verdict, and the plaintiff and appellant argued error in refusing his request to charge, not preserved in the report of the case, but appearing from the case and briefs on file to be as follows:

"A street railway is bound to exercise the utmost care and prudence in carrying its passengers, and responsible for a slight want of care which a careful and vigilant man would observe under like circumstances."

Also:

"The contributory negligence of the party injured [plaintiff] will not defeat the action if it be shown that the defendant might by the exercise of reasonable care and prudence have avoided the consequences of the injured party's negligence."

The court said of these proposed instructions:

"In cases where special verdicts are submitted, the practice of attorneys in requesting instructions only applicable when a general verdict is required ought not to be encouraged. The law does not contemplate, nor proper practice require, the trial court to submit instructions as to the general duty or liability of the parties. . . . Proper practice would seem to demand that instructions submitted in such cases should be directed to specific questions asked and not to the case generally, as when a general verdict is submitted."

Here the first requested instruction informed the jury that the defendant was "responsible" if it failed of the degree of care there stated, and the second that the contributory negligence of the plaintiff would not "defeat the action" under the circumstances explained. This is a good illustrative case of what may be considered general instructions, which at the same time, by reason of their generality, inform the jury of the effect of their answers to special questions. Nothing was better established in the law, where a general verdict was submitted, in form "We find for the plaintiff and assess his damages at $————," or, "We find for the defendant," than for the court to tell the jury what was necessary to be established by the evidence before they could find for the plaintiff and what should appear in order to justify them in finding for the defendant. For illustration: It was not only proper, but necessary, in such case to charge that "the plaintiff cannot recover unless the defendant has been guilty of negligence [defining it] which was the proximate cause [defining it] of the injury to the plaintiff, nor unless the plaintiff has been free from contributory negligence." But when the verdict consisted of special findings covering these particulars it must be manifest that such a charge would expressly inform the jury of the effect of their answers to the special questions.

In *Worachek v. New Denmark Mut. H. F. Ins. Co.* 102 Wis. 81, 78 N. W. 165, the instruction excepted to could not be properly classed as a general instruction, but, taken in connection with the question of the special verdict to which it was applicable, it clearly informed the jury of the effect of their answer upon the final result. In *Ward v. C., M. & St. P. R. Co.* 102 Wis. 215, 78 N. W. 442, there was a special verdict submitted, but in connection therewith a general verdict. The opinion recognizes this practice of combining special and general verdicts as existing and finding support to some extent in former decisions of this court, but criticises

it and calls special attention to the difficulties attending the giving of a proper charge in such case. The trial court had given a general charge "telling the jury under what circumstances the plaintiff could recover and under what circumstances he could not recover." It is said this is the very thing the special verdict is intended to prevent. The court was brought by this case face to face with the impracticability or impossibility of combining a special verdict with a general verdict because of the difference in the mode of instructing the jury, the general instructions or the instructions appropriate to a general verdict being contrary to the spirit and meaning of the special-verdict statute, because they necessarily informed the jury of the effect upon the final result of their answers to some or all of the special questions. The rule was there announced that such combinations of special and general verdicts, whenever instructions appropriate to the general verdict were given, would thenceforth be considered error. In *McDermott v. Jackson,* 102 Wis. 419, 78 N. W. 598, it was said that the instructions appropriate to each particular question of the special verdict ought to be given together in connection with that question, but the court declined to consider the contrary practice reversible error.

In *Schaidler v. C. & N. W. R. Co.* 102 Wis. 564, 78 N. W. 732, where there was a combination of special and general verdict with a lengthy charge upon several of the special questions, which was given in detached fragments, this court reversed the judgment for this and other errors. The charge upon the general verdict, as shown by the case and briefs on file, contained such expressions as:

"If you believe from the evidence in this case that the whistle was blown and the bell was sounded, . . . your finding should be for the defendant. In case you believe that the whistle was not blown or the bell not sounded, . . . and further believe . . . that the deceased was guilty of contributory negligence, . . . then under the law the plaintiff would not be entitled to recover."

This is a case where the general charge, or, in other words, the charge appropriate to a general verdict, expressly informed the jury of the effect of their answers to some of the special questions, and the giving of the charge appropriate to the special question in detached fragments aggravated or accentuated the former error.

, In *Bauer v. Richter,* 103 Wis. 412, 79 N. W. 404, there was a special verdict, and "in the charge of the court, and with reference to almost every question submitted in the special verdict, the judge made use of expressions as follows: 'The plaintiff contends that you should answer this question Yes.' 'The plaintiff says you should answer this question No.'" This language was criticised by appellant as a violation of the rule that a trial court should not inform the jury of the effect of their answers to the questions in the special verdict. This court criticised the form of instruction, but declined to hold it reversible error, saying:

"It has always been the practice of trial courts to state to the jury the contentions of the respective parties. Certainly, every juror with sufficient intelligence to entitle him to sit in the case gets an idea of the general result of his verdict. The thing to be guarded against is that the court shall not, by any authoritative statement from the bench, inform the jury of the ultimate result of their deliberations."

We have here a case in which the court told the jury what must have been obvious to the jury after they had heard the arguments of counsel. The jury might reasonably infer that. the counsel for plaintiff would not contend for an affirmative answer if that answer would defeat his client in the case, etc. But the court should not expressly or authoritatively instruct the jury to consider the effect upon the final result in arriving at their answers to the particular questions. This case also seems to exclude the view that, in order to be correct, a charge must be so given that an intelligent juror would be unable to discover the effect of his answers to the special questions, and that the test of the correctness of the

274    SUPREME COURT OF WISCONSIN.    [Nov.

Banderob v. Wis. Cent. R. Co. 133 Wis. 249.

charge in this respect is not whether an intelligent juror might infer therefrom the effect upon the final result of his answer to the special question, but whether or not the charge leads the juror to believe or to understand that it is his duty to so consider the effect of his answer in arriving at that answer.

In *New Home S. M. Co. v. Simon,* 104 Wis. 120, 80 N. W. 71, where there was a special verdict, one of the grounds of reversal was that "the court prefaced its instructions as to the special verdict by giving general instructions on the law of the case, and from which the jury could readily tell the effect of their answers." This form of stating the rule went farther than any case up to that time, and seemed to cover a case where there were general instructions on the law from which the jury could readily tell the effect of their answers. This language, of course, is to be construed with reference to the questions then before the court. The general instructions under consideration are not preserved in the report of the case. An examination of the printed case and briefs shows that one of these instructions was as follows:

"If you find, under all the evidence, that the defendant did not notify the plaintiff's representative that the plaintiff must procure another surety to such guaranty, then he is holden, under the law, upon his own signature, provided you further find that the plaintiff notified the defendant that it accepted his guaranty and that it would thereafter furnish sewing machines and sewing-machine supplies upon the faith of it."

At the same time the third question of the special verdict asked:

"At the conference between Emil Simon and the defendant on the 9th day of September, 1895, did the defendant give Emil Simon any notice that he would not be bound by the letter of guaranty, for the reason that it had not been signed by another surety?"

The first question, asked:

"Did the plaintiff notify the defendant on the 9th of September, 1895, that it accepted the letter of guaranty signed by said defendant?"

It must be apparent from the situation before the court that the general instruction to the jury did inform them in this case of the effect of their answers to questions 3 and 5 of the special verdict above quoted; that is to say, the information thus given to the jury was not as direct and blunt as in some of the cases heretofore cited, but it was nevertheless express information in this regard, rather than instruction from which the intelligent juror might infer the effect of his answers upon the final result.

In *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 312, 80 N. W. 644, there was a special verdict consisting of four questions, and counsel for appellant seems to have raised the point that these questions were too general and did not particularize sufficiently; in short, that the special verdict was not sufficiently special, and that the statute relating to special verdicts could only be satisfied by such detail of question that the questions need not be considered in the light of legal principles given to the jury by the court, which last would be necessary so long as any one of the questions contained any mixed proposition of law and fact. But this contention was overruled, and the court says, speaking of the separate questions of a special verdict:

"In that situation it is necessary to carefully instruct the jury regarding the standard of care necessary to the performance of the duty alleged to have been violated, leaving it to them to determine whether the alleged wrongdoer came up to the legal standard in the particular instance complained of. The questions of contributory negligence, of proximate cause, and what is reasonable, are only, ordinarily, determinable by viewing evidentiary facts in the light of legal principles. The ultimate fact being only properly determinable by viewing evidentiary facts in the light of legal standards, instructions by the court in regard to such standards are necessary."

From this it must be apparent that the forbidden general instructions are not merely general rules of law, because the latter may be given when necessary to elucidate and when applicable to any particular question or questions of the special verdict, and when not given in such form as suggests the propriety of considering the effect of the answer to the special question upon the final result of the case. It is also said in this case that it is proper to give and error to refuse "instructions requested as to each question submitted that may be reasonably necessary to enable the jury to answer it intelligently and according to the law governing the subject. But no instruction as to the effect of an answer upon the ultimate rights of the parties is proper"—citing *Ryan v. Rockford Ins. Co.* 77 Wis. 611, 46 N. W. 885, and *Ward v. C., M. & St. P. R. Co.* 102 Wis. 215, 78 N. W. 442.

In *Rhyner v. Menasha,* 107 Wis. 201, 83 N. W. 303, there was a special verdict consisting of eleven questions, and the condition of the record with reference to instructions is described in the opinion of the court as follows:

"It is impossible to tell from the record just what instructions the court gave with reference to any single question in the verdict. In the general charge the court refers to the several questions, and does little more than state the claims of the respective parties, with an admonition to the jury to find the facts according to the evidence. Turning, now, to the plaintiff's requests, we find a list of fourteen distinct propositions of law, which the record recites were given and to which the defendant excepted. Many of these requests contain abstract propositions of law, proper to have been given had the case been submitted on a general verdict, but distinctly improper when a special verdict is required. Not one of them is addressed to any particular question, although some of them would have been proper had they referred to and been given when the jury's attention was being directed to the particular fact for decision. . . . The rule which commends itself to our judgment is as stated in *McDermott v. Jackson,* 102 Wis. 419, 78 N. W. 598, and *Schaidler v. C. & N. W. R.*

*Co.* 102 Wis. 564, 78 N. W. 732: 'If a special verdict be rendered, the instructions appropriate to each question, whether asked by the parties or given by the court of its own motion, should be submitted to the jury in immediate connection with the questions to which they are, respectively, applicable.' . . . The object of a special verdict is to obtain from the jury answers to certain questions of fact, without regard to their legal effect upon the rights of the parties, and thus obtain a result as far as possible free from sympathy or prejudice. The giving of instructions only applicable to a general verdict tends to defeat that object and undermines the foundation upon which a special verdict should stand"—citing *Ward v. C., M. & St. P. R. Co., supra.*

The requests to instruct thus criticised are not preserved in the opinion.

In *Lyle v. McCormick H. M. Co.* 108 Wis. 81, 84 N. W. 18, there was a special verdict, and the following quotation from the opinion shows what was decided:

"The charge is criticised as being a' general one, and not merely a series of directions calculated to aid the jury in understanding and answering the several questions submitted to them, within the remarks of this court in *McDermott v. Jackson,* 102 Wis. 419, 78 N. W. 598; *Fox v. Martin,* 104 Wis. 581, 80 N. W. 921; and *Rhyner v. Menasha,* 107 Wis. 201, 83 N. W. 303. We are unable to discover any error in this respect prejudicial to the defendant. True, the court did not—as is very good practice—take up each question and explain to the jury its meaning and their method of consideration of it. It is due to the court, however, to say that most of the questions were so clear and unambiguous that such instruction was hardly necessary. The charge is made up of general instructions as to the weight of evidence, burden of proof, and the conduct of the jury generally, more or less applicable to their consideration of every question; but we do not find it obnoxious to the criticism that general rules of law governing the rights of the parties are given to the jury therein so as to inform the latter of the effect of their answer either way to any interrogatories. *Ward v. C., M. & St. P. R. Co.* 102 Wis. 215, 225, 78 N. W. 442; *New Home*

*S. M. Co. v. Simon,* 104 Wis. 120, 126, 80 N. W. 71. It should also be borne in mind that no requests for specific instructions with reference to any of the questions were made by the defendant, except as hereafter discussed."

The judgment was affirmed. It is, perhaps, not easy to distinguish between this case and *Rhyner v. Menasha, supra,* in the absence from the opinions of the instructions upon which the last-mentioned case was reversed and the former affirmed; but it is sufficient to say here that in *Rhyner v. Menasha* the instructions apparently tended to confuse and mislead the jury, while in *Lyle v. McCormick H. M. Co., supra,* the instructions given in the same way had no such apparent tendency.

In *Musbach v. Wis. C. Co.* 108 Wis. 57, 84 N. W. 36, there was a special verdict, the sixth question of which was as follows: "Was the explosion caused by a leakage in the pipes, or from careless handling of the burner or its attachments, connected with such embossing machine, by the plaintiff or by Charles Wolf?" Respecting this question the court charged:

"If you should determine from the evidence that the injury to the plaintiff was caused by the negligence of Charles Wolf in and about his employment in operating an embossing machine in the same room in which the plaintiff was at work, and further determine from the evidence that the defendant exercised reasonable care and diligence in employing said Wolf, then the defendant would not be liable for the injury complained of."

This, of course, informed the jury expressly of the effect of their answer to the sixth question, and the judgment was reversed. *Sheppard v. Rosenkrans,* 109 Wis. 58, 85 N. W. 199, contained the same error as the case last mentioned, but the judgment was affirmed for want of separate or specific exceptions to that part of the instructions.

*Bartlett v. Collins,* 109 Wis. 477, 85 N. W. 703, was a case in which, with reference to a special verdict, the court

charged the jury that the defendant had the burden of proof to show by the greater weight of evidence that both parties intended the transaction to be a gambling or wagering contract, and that unless they did so the defense failed. It was held that this was an instruction applicable only to a general verdict and therefore erroneous; but it is apparent that the instruction also expressly informed the jury of the effect of their answer upon the final result.

In *Mauch v. Hartford,* 112 Wis. 40, 87 N. W. 816, there was a special verdict and judgment thereon against the defendant, who appealed and the judgment was affirmed; but in the opinion it is said that at the close of the instructions directed to particular questions a general charge was given on the subject of negligence, and the correctness of the definition of negligence therein contained was challenged by the appellant. The court said:

"Probably the definitions given by the court of legal terms applicable to negligence were correct enough as mere statements of abstract propositions, but all general instructions on the subject should have been omitted. . . . General instructions, and especially the statement of mere abstract principles of law, with which the jury have no possible concern, should be wholly omitted where a special verdict is taken [citing cases]. Any other course tends to defeat the object of a special verdict."

It is said that this point was not raised by a proper exception, which would seem to indicate that a mere general exception was insufficient, but that is not decided.

In *Byington v. Merrill,* 112 Wis. 211, 88 N. W. 26, there was a special verdict and among the questions submitted was the following:

"Had ice and snow accumulated on the said sidewalk at the time and place of the accident, in a rough, uneven, and slippery ridge, so as to make the sidewalk at said point and time insufficient or out of repair, so as to render it unsafe and dangerous for persons traveling thereon in the use of

ordinary care? (4) If you answer question No. 2 'Yes,' then had such defective condition of said sidewalk existed for such time that the city authorities, in the exercise of ordinary care, ought to have known and remedied it before the accident?"

The judgment of the court below was reversed upon the ground, among others, that the court erred "in giving general instructions to the jury." These instructions are not preserved in the report of the case, but were given in the introductory part of the charge and before taking up and explaining the questions of the special verdict, and contained the following, which should be compared with the questions of the special verdict above quoted in order to ascertain the effect and value of the decision in question:

"It is the settled law of this state that if snow or ice has been allowed to accumulate on a way or walk or public highway of a city, and becomes so rough and uneven as to make it dangerous to those traveling on it in the use of ordinary care, it is such a defect as may make the city liable for injury caused by it to one so traveling upon the walk or way."

"If the city authorities, knowing that a sidewalk is defective and unsafe, or after having had sufficient time, in the exercise of reasonable diligence or ordinary care, to discover and repair or remove the defect in the walk, suffer it to remain in an unsafe and defective condition, and if a person, while lawfully and in the exercise of ordinary care traveling over the said sidewalk in such unsafe condition, becomes injured by reason of such defect in the walk, the city becomes liable for damages sustained by reason of the accident."

This charge undoubtedly expressly informed the jury of the effect upon the liability of the defendant of their answers to the questions of the special verdict above quoted, and the expression "general instructions," found in the opinion of the court, has reference to such instructions.

*Gerrard v. La Crosse City R. Co.* 113 Wis. 258, 89 N. W. 125, was a case submitted to a jury upon a special verdict,

and, to quote from the opinion: "The court gave the jury, against proper exceptions, instructions which plainly told them the legal effect of their answer upon the question of contributory negligence." The judgment was reversed for this reason.

*Gutzman v. Clancy,* 114 Wis. 589, 90 N. W. 1081, was submitted upon special verdict, and it was said that the error of giving requested instructions without indicating their applicability, if any, to the questions of the special verdict, could not be predicated upon an exception to this part of the charge as "contrary to law and contrary to the evidence." The judgment below was, however, reversed upon the ground that the court informed the jury of the effect of their answers by stating under what circumstances a party would be liable, and by instructing the jury that if they found "that the defendant struck the first blow, but also should find that the plaintiff used more force than was reasonably necessary in repelling the assault or defending himself, then the plaintiff is not entitled to recover damages, but the defendant would be." When we consider that the special verdict required the jury to find who committed the first assault and whether the party first assaulted used more force than was reasonably necessary in repelling the assault, the point of this decision becomes apparent. *Patnode v. Westenhaver,* 114 Wis. 460, 90 N. W. 467, presents the same question as the last preceding case. *Cullen v. Hanisch,* 114 Wis. 24, 89 N. W. 900, was submitted on special verdict, and the trial court, before instructing the jury relative to the questions of the special verdict, charged the jury generally and informed them what would entitle the plaintiff to recover.

In *Schroeder v. Wis. Cent. R. Co.* 117 Wis. 33, 93 N. W. 837, where there was a special verdict containing a question asking whether the plaintiff was guilty of contributory negligence, it was held proper to instruct the jury that, if

any want of ordinary care on the part of the plaintiff appeared, this would require an affirmative answer to that question. In *Baumann v. C. Reiss C. Co.* 118 Wis. 330, 95 N. W. 139, it is said in answer to an argument that the special verdict submitted was so framed as to indicate what answers were necessary to certain questions to enable the plaintiff to recover:

"It has not yet been held error for a trial court to include in a special verdict undisputed matters, and direct answers to be made, or not to frame the verdict so as to disguise the effect of particular questions upon the final result."

In this case, also, instructions stating to the jury what they were required to be convinced of, or to find, in order to be able to answer a designated question in the affirmative, were approved. To the same effect is *Walker v. Ontario,* 118 Wis. 564, 95 N. W. 1086, where there was a special verdict, and the requirements of the law respecting the matters covered by a designated question were stated to the jury.

In *Kaiser v. Nummerdor,* 120 Wis. 234, 97 N. W. 932, there was a special verdict, the parts of the instructions excepted to are quoted in the opinion, and a charge stating the general rules of law applicable to a particular question of the verdict is approved and the judgment affirmed. In *Schrunk v. St. Joseph,* 120 Wis. 223, 97 N. W. 946, where there was a special verdict, a charge stating the general rules of liability of towns where such general rules were not pertinent to the understanding or explanation of any particular question of the special verdict, although it did not expressly or by necessary implication inform the jury of the effect of their answers, was criticised, but not decided to be reversible error. *Lyon v. Grand Rapids,* 121 Wis. 609, 99 N. W. 311, presents an instructive contrast, because it was there held error to refuse an instruction which informed the jury of the following rule of law relating to a particular question of the special verdict, viz.: "Since plaintiff knew of the defect in the walk, it was her duty to use greater care than she would

otherwise have been required to use in order to come up to the standard of ordinary care." At the same time it was held error to instruct the jury in regard to the law applicable to the ultimate facts; that is to say, with reference to the ultimate liability of either party.

In *Hughes v. C., St. P., M. & O. R. Co.* 122 Wis. 258, 99 N. W. 897, where there was a special verdict, instructions quoted in the opinion, consisting of general rules of law defining or fixing the duty of the party, but applicable to the designated question, were approved. The same kind of instructions were approved in *Lightfoot v. Winnebago T. Co.* 123 Wis. 479, 102 N. W. 30, where there was a special verdict, and the instructions will be found quoted in the opinion; and also in *Mueller v. N. W. Iron Co.* 125 Wis. 326, 104 N. W. 67, under similar circumstances. In *Alft v. Clintonville,* 126 Wis. 334, 105 N. W. 561, where there was a special verdict, and the jury were instructed that, "if the city authorities do not use reasonable diligence in discovering and repairing defects, then they are legally at fault in that regard, whether an accident result or not," the judgment was affirmed, presumably on the ground that "legally at fault" meant "negligent" rather than "liable," or upon the ground that the objection to this part of the charge, as informing the jury of the result of their answers, was not raised by proper exception.

In *Meyer v. Home Ins. Co.* 127 Wis. 293, 106 N. W. 1087, there was a special verdict, and with reference to certain questions thereof inquiring into a defense of fraud the court charged:

"As to the third, fourth, and fifth questions, the burden of proof is upon the affirmative of the question, and, inasmuch as such affirmative answer will prove fraud, you will not answer either of the last three questions by 'Yes' unless you are satisfied by a clear preponderance of all the evidence in the case that such affirmative answer is true and correct."

This was claimed to be erroneous because it informed the jury of the effect of their answers and the opinion, at least by implication, sustains this view.

In *Van de Bogart v. Marinette & M. P. Co.* 127 Wis. 104, 106 N. W. 805, where there was a special verdict, there was an instruction quoted in the opinion which did inform the jury of the effect upon the final result of a finding that the injury was the result of pure accident, although it may be observed that there was no question of the special verdict expressly calling for a finding on that proposition. But the court went further and said:

"Another instruction informed them generally as to the duty of the master to furnish a safe place for his servants to perform their duties. This was not required to inform them of what constituted a reasonably safe place and manifestly apprised them of the legal effect of a finding that the master had failed in his duty in this respect."

*Van de Bogart v. Marinette & M. P. Co.,* upon the second appeal, is reported in 132 Wis. 367, 112 N. W. 443, and it was argued that the same error for which the case was formerly reversed was repeated on the second trial. But this court, affirming the judgment, holds otherwise. Nevertheless on the second trial the jury were instructed:

"Our statute provides that the owner or manager of every place where persons are employed to perform labor shall securely guard or fence all shafting which is so located as to be dangerous to employees in the discharge of their duties."

"The failure to guard or fence a set-screw on a shaft so located as to be dangerous to employees while in the discharge of their duty would be negligence."

These instructions were given in connection with the third question of the special verdict, were duly excepted to, error was assigned, and it was argued, and the claim distinctly made and presented to this court in subdivision 4 of appellant's brief, that these were general propositions of law, the

giving of which clearly informed the jury of the effect of their answers upon the rights of the parties.

In *J. H. Clark Co. v. Rice,* 127 Wis. 451, 106 N. W. 231, there was a special verdict, and one of the questions was whether the defendant in giving the note in question relied upon certain representations. It was held error to refuse to instruct the jury "to the effect that if the defendant had full opportunity to investigate the operation of the device, and there was no concealment nor fraud on the part of the plaintiff, then it became the duty of the defendant to investigate and form his own opinion as to the value and utility of the device, and he could not rely upon mere expressions of opinion made by the officers or agents of the company."

In *Howard v. Beldenville L. Co.* 129 Wis. 98, 108 N. W. 48, where there was a special verdict, the instructions held to be erroneous, because general instructions, are not preserved in the opinion of the court and the case cannot be considered as more than an affirmation of the rule laid down in the many cases upon that point herein referred to.

In *Horn v. La Crosse Box Co.* 131 Wis. 384, 111 N. W. 522, where there was a special verdict, the plaintiff in a personal injury case as appellant argued that the following instructions violated the rule that the court should not advise the jury of the effect of their answers. These instructions so excepted to were as follows:

"If the plaintiff knew that there was a rapidly revolving knife or knives at the edge of the lower hopper, that his hand was liable to come in contact therewith in attempting to take hold of the hopper, he must be held to have appreciated the danger and assumed the risk in attempting to do the work, although by the express direction of the defendant. The true test as to whether a minor has assumed the ordinary risks of his employment, or is guilty of contributory negligence, is not whether he in fact knew and comprehended the danger, but whether under the circumstances he ought to have known and comprehended such danger."

The court said:

"Counsel do not point out definitely wherein the instructions complained of violate such rule, and we are unable to discover the suggested difficulty. The instructions were not given generally in the case, but with reference to the particular question to which they were supposed to apply. That question covered the phase of contributory negligence denominated 'assumption of the risk,' and negligence of the plaintiff as regards his personal safety inconsistent with that which, considering his age and intelligence, he ought to have known. Therefore it was legitimate for the court to instruct the jury as to what constituted contributory negligence in those aspects of the case, in order that they might answer the question intelligently."

In *Walker v. Simmons Mfg. Co.* 131 Wis. 542, 111 N. W. 694, where there was a special verdict and the defendant appealed from a judgment against it, it is said:

"Error is assigned in the charge and refusal to charge. Respecting the third question of the special verdict, as to whether the place furnished by defendant was a reasonably safe place, the court charged: 'The law requires that the employer shall securely guard or fence shafting which is so located as to be dangerous to employees in the discharge of their duties; and if you find that the shafting in question, under all the facts and circumstances proven, was so located as to be dangerous to the plaintiff in the discharge of his duties in the line of his employment at the time of the injury to him, you should answer the question "No."' This charge is criticised on the ground that the court told the jury the effect of their answer. True, the court told the jury what the law required respecting the guarding of dangerous shafting, but did not tell them the effect of a finding either way upon the question."

In *Bloch v. Am. Ins. Co.* 132 Wis. 150, 112 N. W. 45, certain portions of the charge quoted in the opinion were excepted to upon this ground, but it was held that the giving of such general rules of law as are there indicated applicable to the questions of the special verdict did not suggest the effect

of the answers to such questions upon the final judgment to be rendered and was not error. *Lyttle v. Goldberg,* 131 Wis. 613, 111 N. W. 718, was a case in which the instructions very obviously indicated to the jury the tendency of the answers in their ultimate effect. The instructions were criticised, but this court declined to reverse the judgment on this ground, because there could have been little doubt that, aside from the instructions, the jury fully understood the legal effect of their answers.

It is believed that the foregoing presents a fairly comprehensive *résumé* of the decisions of this court upon the questions raised by appellant with reference to the four paragraphs of the charge above quoted and upon analogous objections. With the exception of *Reed v. Madison,* 85 Wis. 667, 56 N. W. 182, which goes too far in sustaining a charge of the kind under consideration, and *Meyer v. Home Ins. Co.* 127 Wis. 293, 106 N. W. 1087, and *Van de Bogart v. Marinette & M. P. Co.* 127 Wis. 104, 106 N. W. 805, which go too far in the opposite direction, the cases are fairly harmonious. The three cases last mentioned should be limited accordingly. From the other decisions referred to it must be apparent that: (1) It is reversible error for the trial court by instruction to the jury to inform the jury expressly or by necessary implication of the effect of an answer or answers to a question or questions of the special verdict upon the ultimate right of either party litigant to recover or upon the ultimate liability of either party litigant. (2) By the term "general instructions," in this connection, is meant such instructions as are appropriate only to a general verdict, and which also inform the jury of the effect of their answers upon the final result. (3) The giving to the jury of general rules of law appropriate to the particular question of the special verdict in connection with which such rules are given is not error. (4) A charge otherwise proper is not erroneous merely because an intelligent juror might be able to infer

therefrom the effect upon the final result of his answers to the special questions. (5) All parts of the charge bearing upon a particular question of the special verdict, whether given by the court of its own motion or at the request of either party, should be given together in connection with the submission of that question to the jury, and the failure so to do will be considered error when it appears to this court that the jury were misled thereby, but not otherwise.

Applying these rules to the charge in question, we find that the first paragraph of the charge above quoted properly relates to the second question of the special verdict and is appropriate to that question only. The second paragraph relates to the fifth and sixth questions of the special verdict and is appropriate to these questions only. The third paragraph is appropriate to the seventh question of the special verdict. The remainder of the charge above quoted expressly relates to the eighth question of the special verdict and is appropriate to that question. The charge is not of that kind or class which informs the jury of the effect of their answers upon the final result. The general rules of law there given are appropriate to particular questions. The failure to give the first, second, and third paragraphs in connection with the remainder of the charge relating to the second, fifth, and seventh questions, or to designate expressly these questions therein, while irregular, was not in this case, considering the form of the verdict and the matter charged, such a departure from correct practice as to mislead the jury. It would have been proper to refuse several of the requested instructions because they did not expressly designate the particular question of the special verdict to which they were directed; but the court having given them and the instructions being in other respects appropriate to particular questions of the special verdict, and there having been no such objection taken at the time by appellant, there is in this no sufficient ground for reversing the judgment of

the court below. We find no reversible error in the instructions of the court to the jury, either in the use of the words "depot grounds," the generality of the instructions, or the definitions of negligence and contributory negligence. The requests to instruct the jury to return a verdict for the defendant and to give definite specified answers to the several questions of the special verdict were properly refused, and the advisory matters requested seem to have been sufficiently covered by the charge given.

With reference to the admission of evidence, we perceive no serious or reversible error in using in a question the words "depot grounds" to identify the place in question. The evidence on the part of the plaintiff that there were at times four trucks on the platform, although there was at the time of plaintiff's injury but one, was competent as bearing upon the negligence of the defendant in maintaining these wires where it did. Permitting the witness to testify that these wires were probably down more times than they were up was harmless error, if error at all, and the evidence that since the accident there was a fence built between the brick platform and the grass plat came in, not in response to questions calling for such evidence, but upon an examination of defendant's station agent by plaintiff, in which witness was asked and answered without objection as follows:

"*Q*. State what was along the easterly side of the walk leading from the platform to Church street and immediately between that lawn and walk, if anything, from the time that you went there in 1904 down to the present time. *A*. There has been nothing there, with the exception of the fence that is there now."

It was now in evidence that there was a fence there all the time, including the time of the accident, and the plaintiff sought to correct this by asking: "*Q*. Was that fence placed there prior to this accident in August, 1905?" To this the defendant objected, the objection was overruled, and

VOL. 133 — 19

the witness answered "No, sir." The defendant, having permitted the first question and answer without objection, could not properly object to the correction of that answer in the particular mentioned.

It is urged upon us that the damages are excessive. The plaintiff is an unmarried woman aged twenty-five years, and the evidence tends to show that her right arm was so seriously disabled as to make it impossible for her to dress herself without assistance and to disable her from work of any kind, that there seems to be anchylosis of the elbow joint, and the attending physician testified that in his opinion that condition would continue and the disability remain permanent. It is impossible for this court to say under such circumstances that the verdict was the result of passion, prejudice, or ignorance. *Donovan v. C. & N. W. R. Co.* 93 Wis. 373, 67 N. W. 721.

*By the Court.*—The judgment of the circuit court is affirmed.